FOSTER *v.* STATE.

[86 South. 513.   No. 21489.]

LARCENY. *No offense where owner consents to conversion.*
 Where the owner of personal property, induced by fraud, intends
 by delivery to pass both possession and title to the cheater, the
 offense is not larceny, because he consents to its conversion by
 the offender.

APPEAL from circuit court of Hinds county.
HON. W. H. POTTER, Judge.

Andrew Foster was convicted of grand larceny, and he
appeals.   Reversed, and appellant discharged.

*Burch & Enochs,* for appellant.

We are familiar with the case of *Akroid* v. *State,* 107
Miss. 51, wherein this court, speaking through the chief
justice, said that when possession of property is acquired
by fraud with the felonious intent then and there to de-
prive the owner of it, the perpetrator is guilty of larceny.

But a principle of law equally as well settled is the
principle that he who obtains by fraud not only the posses-
sion but the title to property, with the felonious intent to
deprive the owner of it, is not guilty of larceny.   In other
words, if the owner or the possessor who has actual or
apparent authority to deal with the title of goods intends
to pass the title and not merely the possession of the goods
to a person whose intent in taking same is felonious, the
act of taking is larceny.   2 Bishop's New Criminal Law,
page 469, says:  "If, by fraud, a person is induced to part
with his goods, meaning to relinquish his property in them
as well as his possession, he who thus obtains them may be
chargeable with a cheat at the common law or under the
statutes against false pretenses, yet not with larceny; be-
cause, it is assumed, the owner having actually consented
to part with his ownership, there was no trespass in the
taking."

In 25 Cyc. 23 this rule is stated as follows: "If the owner or possessor who has actual or apparent authority to deal with the title of goods intends to pass the title and not merely the possession of the goods to a person whose intent in taking same is felonious, the act of taking is not larceny. It is not necessary that the intention should be to pass title to the person who obtains the property. If that person pretends to be a servant or agent and to be obtaining it for a master or principal and the giver intends the title to pass to the latter, the transaction does not constitute larceny. But in order to prevent larceny the title must be intended to pass at the time of the transaction; if possession alone is then passed with permission that the taker should later assume title to the property, or part of it, the taking, if fraudulent and with intent to steal, is larceny."

We call the court's attention to the decision of the supreme court of Missouri in the case of *State* v. *Copeman,* 84 S. W. 746, decided January 31, 1905; 1 Bishop's New Criminal Law, section 585; *State* v. *Murphy,* 90 Mo. App. 548; *Loomis et al.* v. *People,* 67 N. Y. 22, 23 Am. Rep. 123; *State* v. *Vickery,* 19 Tex. 326; 12 Am. & Eng. Ency. of Law (2 Ed), p. 805."

We call the court's attention to the facts set out in the case of *Pease* v. *State,* 21 S. E. 588; *Welsh et al.* v. *People,* 17 Ill. 339; *Perkins* v. *State,* 65 Ind. 317; *Welsh* v. *The People,* 17 Ill. 339; *Stinson* v. *The People,* 43 Ill. 397; *Commonwealth* v. *Wilde,* 5 Gray 83; *William* v. *The State,* 49 Ind. 367; *Jones* v. *The State,* 59 Ind. 229.

The Kentucky court of appeals had occasion to pass upon this subject in the case of *Elliot* v. *Commonwealth,* 12 Bush. 176, wherein that court says: 2 Russell on Crimes, 21; *Thorne* v. *Turck,* 94 N. W. 90, 46 Am. Rep. 126; *Loomis* v. *People,* 67 N. Y. 322; S. C. 23 Am. Rep. 123, is relied upon by the counsel of both sides, but we think it falls far short of holding that the obtaining of money upon a false representation, with an absolute surrender of the title to the same, constitutes the crime of larceny. In that case

the money was parted with for a specific purpose and with-
out any intention of parting with the title to the same.   It
is there laid down that even though the owner is induced
to part with his property by fraudulent means, yet if he
actually intends to part with it and delivers up possession
absolutely, it is not larceny, and further it is said 'it will
be observed that the intention of the owner to part with
his property is the gist and essence of the offense of larceny
and the vital point upon which the crime hinges and is to
be determined.  Within the rule laid down it is apparent
that there was an intention to part absolutely with the
money in the case at bar, and it therefore cannot be claimed
that the case cited sustains the position contended for
by the appellant's counsel.

The Texas court of appeals likewise had occasion to
pass on this subject in the case of *Pitts* v. *The State,* 5
Tex. App. 122.   Here Pitts obtained from one Robinson
a bay horse fraudulently, by swapping to Robinson for
the bay horse a black horse that he did not own.   Robin-
son was forced to give up the black horse, and Pitts hav-
ing disposed of the bay horse, was arrested, tried and
convicted of larceny.   The court of appeals in setting
aside the conviction said: "We believe that the facts
proven in this case do not, in law, constitute the offense of
theft, but swindling.   *White* v. *State,* 11 Tex. 770; *Cline*
v. *The State,* 1 Port. 126; *Ross* v. *The People,* 5 Hill. 294;
*Murray* v. *Welsh,* 8 Cow. 242; 2 Bishop's Cr. Law, (4 Ed.),
section 816-818."

It was not contended by the state that there is any such
person as John Bently, but the name of Bently was one
assumed for the occasion.   However, if there had been a
person named John Bentley to whom Foster Neely and
Henry Williams owed one hundred dollars and that Will
Jones impersonated John Bentley on the occasion in ques-
tion, yet that would make no difference for Bishop says,
in Vol. 2 of Bishop's New Criminal Law, at page 473:
"One who obtains money by a false letter in a third per-
son's name, or by personating him, does not commit lar-

ceny, whatever his intent; because the person parting with the money meant to relinquish both ownership and possession." Section 1166 of the Code of 1906, reads very much like the New York statute covering false pretenses, to-wit: "Every person, who with intent to cheat or defraud another, shall designedly, by color of any false token or writing or by any other false pretense, obtain the signature of any person to any written instrument, or obtain from any person any money, personal property, or valuable thing, upon conviction thereof, shall be punished," etc.

And it seems to us that if appellant was guilty of anything he was guilty of false pretenses under this statute, or of the crime of cheating under the common law as is defined in the case of *Johnson* v. *State*, 87 Miss. 502, for if the owner or the possessor who has actual or apparent authority to deal with the title of goods intends to pass the title and not merely the possession of the goods, the taker is not guilty of larceny.

Our contentions in this case are not at variance with the holding of this court in the case of *Akroid* v. *The State*, 107 Miss. 51, and in the case of *Watson* v. *The State*, 36 Miss. 593. In the Watson case it is true the defendant Watson obtained a bill of sale to the property from one of the joint owners, but this court took pains to state that the same was obtained under pretense of protecting the title and possession of their property and for their benefit. In other words, it clearly appears that the purpose of the bill of sale was not to pass the title and possession of the owner, but for the purpose of protecting the title and possession in the owner.

The instruction in this case is erroneous in that it advises the jury that they must find the defendant guilty of larceny if he feloniously obtained Mr. Harris' money by fraud. If the jury believed from the evidence that both the title and the possession of the money passed from Harris, or his agent (which is the same thing) then the defendant could not legally have been guilty of larceny even though the title and possession were feloniously obtained

by fraud. The crime of obtaining one hundred dollars by false pretense is a felony in this state. And if the defendant feloniously obtained both title and possession of the money by fraud, he was guilty of the crime of false pretenses, and could not be convicted therefor under an indictment for grand larceny.

*Wm. Hemingway,* assistant attorney-general, for the state.

The obtaining of this money was by fraud. There was no such person as John Bentley, consequently, the charge of false pretenses could not be sustained, because Will Jones did not attempt to impersonate a living person, John Bentley being a creation of the conspirators. The attempt at all times was to deprive Mr. Harris of his money.

If the consent of the owner to the taking is obtained by fraud, it will not prevent the taking from being larceny. If one obtains possession of goods from the owner or possession by fraud with intent to steal, the taking is larceny, as is now held in every jurisdiction. 25 Cyc., page 40, notes 74 and 75. There is a Mississippi case cited in note 75; *Akroid* v. *State,* 107 Miss. 51.

It is urged that where a party gives another money in trust, or places it on a wager and expects to get it back again, that the crime is larceny, otherwise it is false pretenses. If it be admitted that these men obtained this money lawfully, they very promptly converted it to their own use because the account was not due to anybody. *Smith* v. *Com.,* 96 Ky. 85, 49 Am. St. Rep. 287.

The principle applicable for determining whether money obtained fraudulently amounts to larceny or not is well illustrated in *People* v. *Tolinson,* 102 Cal. 19, 23, 36 Pac. 806, 507. The court says: "Where one honestly receives the possession of goods upon a trust, and, after receiving them, fraudulently converts them to his own use, it is a case of embezzlement. If the possession has been obtained

by fraud, trick, or devise, and the owner of it intends to part with his title when he gives up possession, the offense, if any, is obtaining money by false pretenses. But, where the possession has been obtained through a trick or device, with the intent, at the time the party receives to convert the same to his own use, and the owner of the property parts merely with the possession, and not with the title, the offense is larceny. The distinction was applied in the later case. *People* v. *Shaughnessay,* 110 Cal. 598, 43 Pac. 2. Mr. Justice Caton states the principle a little more comprehensively in *Well* v. *People,* 17 Ill. 339. He says: The rule is plainly this: If the owner of goods alleged to have been stolen parts with both the possession and the title to the goods to the alleged thief, then neither the taking nor the conversion is felonious. It can but amount to fraud. It is obtaining goods under false pretenses. If, however, the owner parts with the possession voluntarily, but does not part with the title, expecting and intending that the same thing shall be returned to him, or that it shall be disposed of on his account, or in a particular way, as directed or agreed upon, for his benefit, then the goods may be feloniously converted by the bailee, so as to relate back and make the taking and conversion a larceny. This doctrine is expressly reaffirmed by two later cases from the same state. *Stinson* v. *People,* 43 Ill. 397; *Doss* v. *People,* 158 Ill. 660, 49 Am. St. Rep. 180, 41 N. E. 1093; 1 L. R. A. (N. S.) 1164.

The foregoing discussion is not in direct point but the principle there announced is applicable to the instant case. There was never any money due. Mr. Harris did not expect to part with his money; he was paying an account* for the negroes. Their acts therefore, relate back to their intent and makes the conversion a larceny.

The section of the code cited by counsel, 1166, Code of 1906 (Hémingway's Code, section 893), was not applicable, because the fraud practiced was not of the character denounced in that section. Under previous rules of the court the appellant was properly held as guilty of larceny.

For a full discussion of the crime of larceny as distinguished from false pretenses, and what constitutes trespass, see 17 R. C. L., sections 13, 14, 15, and 19.

HOLDEN, J., delivered the opinion of the court.

The appellant, Andrew Foster, was indicted and convicted of grand larceny, upon the following facts shown by the state: Foster and three other negroes, viz., Neely, Williams, and Jones, all of Jackson, Miss., entered into a conspiracy to obtain one hundred dollars from Mr. C. E. Harris, a farmer of Grand Junction, Tenn., who was in need of labor on his farm, which latter fact the conspirators knew of. Two of them, Neely and Williams, in pursuance of the conspiracy, got in touch with Mr. Harris and agreed to go to Tennessee to labor for him provided he would pay an account of one hundred dollars which they pretended to owe to one "John Bentley" in Jackson, and to pay their transportation to Tennessee. Thereupon Mr. Harris sent his agent, John Thomas, to Jackson with the money to pay said account and transportation. When Mr. Harris' agent, Thomas, reached Jackson, one of the four conspirators named Jones was presented to Thomas as "John Bentley," and Jones then and there falsely stated to Thomas that Neely and Williams owed him one hundred dollars, whereupon Thomas as agent of Mr. Harris paid to the said Jones the one hundred dollars in settlement of said pretended account and took his receipt for same. The representations to Mr. Harris and his agent, Thomas, were false and fraudulent; the one hundred dollars was divided among the four crooks, which was a loss to Mr. Harris.

The appellant presents the point that the proof does not sustain the charge of larceny, and we think the position is well taken.

When Thomas, the agent of Mr. Harris, paid the one hundred dollars to Jones, who was falsely pretending to be one John Bentley, a fictitious person, he intended to part with both the possession and the title to the property,

and consequently there was no trespass in the taking and conversion of the property. In other words, the owner-ship of the property, as well as its possession, was in-tended to pass from Thomas to Jones; and thus Thomas consented to the conversion of the property. And this is true notwithstanding the title and possession were ob-tained through false pretenses or other fraud.

If it were a case wherein Jones had obtained merely the possession and not the title, through fraud, and after-wards converted the property to his own use without the consent of the owner, the offense would be larceny. But the case here is not larceny because Thomas intended to part with both the ownership and the possession of the property when he delivered it to Jones; the money was not paid to Jones to be held in trust or to be returned to Thomas, but it was paid over in settlement of a fic-titious debt with no intent on the part of Thomas to re-tain any interest in the money. That Jones was guilty of a cheat and fraud there is no doubt, but his offense was not larceny. Bishop's New Criminal Law, p. 469; *State* v. *Copeman,* 186 Mo. 108, 84 S. W. 942; *Pease* v. *State,* 94 Ga. 615, 21 S. E. 588; 25 Cyc. 23; *Welsh* v. *People,* 17 Ill. 339; *Perkins* v. *State,* 65 Ind. 317; *Elliott* v. *Common-wealth,* 12 Bush (Ky.) 176; *Thorne* v. *Turck,* 94 N. Y. 90, 46 Am. Rep. 126; *Pitts* v. *State,* 5 Tex. App. 122; Wharton Crim. Law, vol. 2, p. 1422.

In the *Akroyd Case,* 107 Miss. 51, 64 So. 936, cited by counsel for the state, it was held that where the posses-sion of personal property is obtained fraudulently, with the felonious intent existing at the time to deprive the owner thereof, and the person so obtaining it, in pursuance of such intent, does deprive the owner of the property, the offense is larceny. But it will be observed that the owner in that case merely parted with the possession of the prop-erty to the thief, through fraud, and the title or ownership was not intended to pass, and did not pass, from the owner to the thief. In that case the accused obtained the proper-ty with the understanding that the title should remain

in the owner and that the ring would be returned unless he decided later to purchase it.  The difference between that case and the one at bar is that there only possession was obtained by fraud; here both possession and title were obtained by fraud.  In the first case there was a trespass through fraudulent intent when obtaining the possession, and the subsequent conversion constituted larceny. But here the possession and title were both obtained by fraud, and, since the swindler became the owner as well as the possessor, he was thus authorized to convert the property to his own use, and this is so even though he obtained the title and possession through a manifest swindle.

The proof offered by the state in the lower court failed to sustain the indictment, and, the error being substantial and fundamental, we must reverse the judgment of the lower court and discharge the appellant.

*Reversed, and appellant discharged.*