HANNA *v*. STATE.

(Division B.   Dec. 11, 1933.)

[151 So. 370.   No. 30817.]

Ross Barnett and Earl Brewer, both of Jackson, for appellant.

**W. D. Conn, Jr.,** Assistant Attorney-General, for the state.

Argued orally by **Earl Brewer** and **Ross Barnett**, for appellant, and by **W. D. Conn, Jr.**, for the state.

**Anderson, J.**, delivered the opinion of the court.

Appellant was indicted, tried, and convicted in the circuit court of Madison county of the crime of grand larceny, the theft of eighteen bales of cotton, and was sentenced to the penitentiary for a term of four years. From that judgment he prosecutes this appeal.

There was no conflict whatever in the evidence as to the facts of the case. The only issue was what the undisputed facts meant, whether the facts and the reasonable inferences to be drawn therefrom showed appellant's guilt beyond a reasonable doubt and to a moral certainty. We think the jury was fully justified in answering that question in the affirmative.

Shelby Matlock resided in Canton and owned a farm in the eastern part of Madison county. In the fall of 1932 he had on his farm eighteen bales of lint cotton that he had not sold. Appellant was a cotton buyer in Canton. Matlock requested appellant, in passing, to stop and sample the cotton and make him an offer on it. Appellant did as requested, but they disagreed on the price. Appellant then stated to Matlock that he stored his cotton in the Federal Compress at Canton and carried a one hundred thousand dollars blanket fire insurance policy thereon, and proposed to Matlock that he haul his cotton in and store it with the Federal Compress Company, and while so stored appellant would arrange

to have it covered by his blanket insurance, and, in the event he did not buy the cotton, Matlock would only have to pay the storage charges to the compress company. Matlock accepted appellant's proposition and delivered the eighteen bales of cotton to the compress company and received the company's warehouse receipts therefor. Something like two weeks thereafter appellant asked Matlock to let him have the warehouse receipts in order to enter them on his books so that the cotton would be covered by his insurance policy. He stated to Matlock that in order to carry out this plan Matlock would have to indorse the warehouse receipts. Matlock complied with appellant's request and turned the receipts over to him. Appellant promised to return the receipts that afternoon or night. This occurred on the 17th of December, 1932. On the same day the appellant took the eighteen warehouse receipts to the First National Bank and put them up with the bank as collateral for a loan of three hundred dollars. Appellant never returned the warehouse receipts to Matlock. On the next day and for days thereafter Matlock pursued appellant trying to secure the possession of the receipts, but failed to do so. Later appellant paid the loan of three hundred dollars he had with the First National Bank, got the warehouse receipts, sold the eighteen bales of cotton, and appropriated the proceeds thereof to his own use. The cotton weighed about ten thousand pounds, and at the time was selling for something like six cents a pound. Matlock had no intention of transferring the title or possession of either the warehouse receipts or the cotton which they represented to the appellant, and appellant so understood. The only fair and reasonable inference from the undisputed evidence is that from the start appellant fraudulently devised and carried out the scheme, above set out, for the purpose of obtaining possession of the warehouse receipts and the cotton and appropriating the latter to his own use.

Appellant relies on the principle that larceny cannot exist where the legal title to, as well as the possession of, the property passes with the consent of the owner, even though the legal title be obtained by fraud. The fault with appellant's position is that the evidence in this case showed that Matlock never intended to part with either the possession or the title to the warehouse receipts or the cotton, that by the indorsement of the warehouse receipts there was no intention on his part of passing the legal title thereto, and appellant so understood, and that the indorsement of the receipts was simply a part of a fraudulent and felonious scheme on the part of the appellant to get possession of the eighteen bales of cotton and appropriate them to his own use. Under the law this was larceny.

In Watson v. State, 36 Miss. 593, 2 Morris St. Cas. 1184, the court held that, if a person by color of legal process or other fraudulent means obtains possession of goods, although with the owner's consent, with the felonious intent existing at the time to deprive the owner of them, and does in fact so deprive him, it is larceny. And in Akroyd v. State, 107 Miss. 51, 64 So. 936, the court held that, where possession of a chattel is obtained fraudulently with the felonious intent existing at the time to deprive the owner thereof, and the person so obtaining the chattel does deprive the owner thereof in pursuance of such intent, it is larceny. To the same effect is Beatty v. State, 61 Miss. 18.

Foster v. State, 123 Miss. 721, 86 So. 513, and the other authorities relied on by appellant do not sustain his contention. In the Foster case the court held that, where the owner of personal property, induced by fraud, intends by delivery to pass both possession and title "to the cheater," the offense is not larceny, because he consents to its conversion by the offender. We have no such case as that here. On the contrary, as stated, there was no intention on the part of Matlock to part with either the title

to the warehouse receipts or the cotton which they represented or the possession of either or both, and appellant was fully aware of such fact.

Appellant contends that the judgment ought to be reversed because of misconduct on the part of one of the prosecuting attorneys during his argument of the case. The alleged misconduct consisted of this language, used by the attorney: "The testimony for the state stands out here uncontradicted and undenied." Appellant's contention is that this language amounted to a comment on appellant's failure to testify in the case, which is prohibited by section 1530, Code of 1930. The writer of this opinion does not think there is any merit in this contention. In Johnson v. State, 109 Miss. 622, 68 So. 917, the attorney for the state used this language in his argument: "The testimony for the state was uncontradicted." The court held that the statute had not been violated. In Baird v. State, 146 Miss. 547, 112 So. 705, 706, an attorney privately employed to prosecute, addressing the jury, used this language: "Gentlemen of the jury, I call your attention to the fact that the testimony for the state shows that in this case a cold-blooded murder has been done, and it is undisputed." The court held that the statute had not been violated. In the present case the language used was "uncontradicted and undenied." The writer is unable to distinguish any different shade of meaning between the words "uncontradicted," "undisputed," and "undenied." However, the members of this division of the court are not unanimous that the language used in the present case was not violative of the statute; but they are unanimous in holding that, if the statute was violated, no harm was done appellant, under the principle laid down in House v. State, 121 Miss. 436, 83 So. 611. In this case the jury could not have reasonably rendered any other verdict than that of guilty. The evidence pointed in that direction and in that direction alone.

Appellant assigns and argues as error the granting of the following instruction for the state: "The Court instructs the Jury for the state that if you believe from the evidence beyond a reasonable doubt that the defendant, C. B. Hanna, fraudulently obtained possession of the warehouse receipts representing the cotton in question, and that there was no right to the possession of the actual cotton, and that the said C. B. Hanna did thereafter wilfully, unlawfully and feloniously take, steal and carry away the cotton of Shelby Matlock of the value of more than twenty-five dollars, then it will be the sworn duty of the jury to find the defendant guilty as charged."

What we have said in the first part of this opinion disposes of this contention. Under the law, the instruction was particularly applicable to the facts of the case.

Appellant assigns and argues as error the refusal by the court of his request for an instruction embodying this language: "And the Court further instructs the jury that an open taking raises a presumption of fact against the existence of felonious intent, and that the burden of proof is upon the State to overcome this presumption by clear proof, and establish it by competent evidence, beyond all reasonable doubt; otherwise it is the sworn duty of the jury to acquit." There was no error in refusing this instruction. The facts and the only reasonable inferences therefrom did not justify it. There was no evidence tending to show that the taking by appellant was an open taking. On the contrary, the evidence showed that it was clandestine and hidden from the start. Appellant's purpose was not open, but covered up and secret.

We are of the opinion that the other questions argued on behalf of appellant are of so little merit as not to call for a discussion by the court.

Affirmed.