COURTNEY *et al. v.* STATE.

(Division A. Nov. 18, 1935.)

[164 So. 227. No. 31813.]

Don. D. Townsend, of Greenville, and Oscar B. Townsend, of Indianola, for appellants.

**W. D. Conn, Jr.,** Assistant Attorney-General, for the state.

**Smith, C. J.**, delivered the opinion of the court.

This is an appeal from a conviction for obtaining money under false pretenses. The court below refused to direct a verdict for the appellants.

The indictment alleges, in substance, that the appellants, Eli Courtney and Frank Woods, falsely and feloniously pretended to Steve Price that they had found a pocketbook containing a large sum of money, and that they offered to divide its contents with Price if he would give them a certain sum of money; that Price gave them one hundred dollars, whereas Courtney and Woods had not found a pocketbook or any sum of money.

The appellants introduced no evidence, and that of the state discloses that Price met Woods on the streets of Indianola, and immediately thereafter they met Courtney, who said that he had found a pocketbook, showed it to Price and Woods, and asked them "not to give him away," promising if they would not that he would divide the contents with them. To this they agreed. The pocketbook appeared to contain money. Courtney then left them, stating that he would get the money changed, and return. On returning, he stated that he had delivered the pocketbook to a man who was Woods' and his "boss;" that the pocketbook contained one thousand six hundred dollars in money and some bonds; that the "boss" said he would keep the bonds and return the money to Courtney and his companions, provided they would put up one hundred dollars or two hundred dollars to show that they were in good standing. Price then delivered to either Woods or Courtney one hundred dollars in cash, the agreement being that this one hundred dollars was to be returned to him, and, in addition, one-third of the one thousand six hundred dollars. They then agreed to

meet later and consummate the deal. Woods and Courtney failed to keep this appointment, and did not return to Price his one hundred dollars. They were arrested the next day at Moorhead. One of them had in his possession a pocketbook containing "green and yellow" coupons, which was identified by Price as being the one that they claimed to have found. Courtney stated to the officer who arrested them that "they went back by Sunflower to dodge the law because they knew the law had their eye on them."

The appellants say, in effect, that the false pretense is not proven, the evidence failing to negative the finding of the pocketbook containing a sum of money; but, if mistaken in this, the crime of obtaining money under false pretenses was not proven, the appellants being guilty of larceny, if of anything. We will assume, but merely for the purpose of the argument, that the evidence discloses that no pocketbook or money was found; for, assuming that the contrary is true, the crime committed would not be obtaining money under false pretenses, but larceny. Price in delivering the money did not intend to, nor did he, divest himself of the title and ownership thereto, but what he delivered was merely possession of the money to be used for a specific purpose and then returned to him.

At common law, where one obtains the possession of, but not the title to, property from another by means of a false pretense, and with the requisite intent converts it to his own use, the crime committed is larceny. But if the owner in parting with the property invests the recipient with the title thereto, as well as the possession thereof, no larceny is committed. 9 Halsbury's Law of England (2 Ed.), sec. 953; 2 Bishop's New Crim. Law (8 Ed.), secs. 477 and 808; 25 C. J., p. 657; 36 C. J., p. 778; Foster v. State, 123 Miss. 721, 86 So. 513. It will thus be seen that the passing of title constitutes the line of demarcation between larceny and false pretense. Obtaining title to property by a false pretense was in-

dictable at common law, provided the pretense was such as affects the public interest. 1 Hawkin's Pleas of the Crown, 318; Halsbury op. cit., sec. 954; 25 C. J., p. 584. To remedy this defect in the common law, the statute of 33 Hen. 8, chap. 1 (1 Hawkin's op. cit. 319) was enacted, and afterwards other statutes, among which are 30 Geo. 2, chap. 24, sec. 1, 52 Geo. 3, chap. 64, secs. 1, 7, and 8 Geo. 4, chap. 29, sec. 53, 24 and 25 Vict., chap. 96, sec. 88, and Regina v. Kay, 1 Law Reports, chap. 257. The substance of these statutes has been generally enacted in America and appears in section 919, Code 1930. Under these statutes the courts hold that the word "obtain" means not to acquire the mere possession of property, but to acquire the title thereto or the ownership thereof. Halsbury op. cit., sec. 962; Regina v. Kay, supra, and other authorities hereinbefore cited.

The crime of larceny was here committed according to the evidence of the state, although it should not appear therefrom that a pocketbook containing money was actually found; for the appellants obtained money from Price by means of a promise to use it for a specific purpose and to return it to him. This act constitutes larceny provided the money was obtained with the requisite intent. Akroyd v. State, 107 Miss. 51, 64 So. 936.

The court below should have directed a verdict for the appellants, because of the variance between the indictment and the evidence, and, under section 1190, Code 1930, should have ordered them "into the custody of the proper officer" for trial under an indictment charging the offense which the evidence discloses they committed.

Reversed and remanded.