WEIL BROS., INC., v. KEENAN.

(Division A.   Jan. 17, 1938.)

[178 So. 90.   No. 32904.]

Shands, Elmore, Hallam & Causey, of Cleveland, for appellant.

Cooper & Thomas, of Indianola, for appellee.

702

**B. B. Allen,** of Indianola, for Federal Compress & Warehouse Co.

Argued orally by **Dugas Shands,** for appellant, and by **Forrest G. Cooper,** for appellee.

**McGowen, J.,** delivered the opinion of the court.

The Federal Compress & Warehouse Company filed its bill in the chancery court of Sunflower county alleging that it is a United States bonded warehouse located at Ruleville, Miss., and, as such, received from Chris Keenan, the appellee, five bales of cotton for storage, and issued to him its standard negotiable warehouse receipts therefor; that it was under duty by virtue of said receipts to deliver the cotton evidenced thereby on presentation thereof and the payment of the storage charges. It further alleged that Weil Bros. claimed to be the owner of the cotton by virtue of its purchase from Anderson Spencer; that the compress company was anxious, ready, and willing to surrender the cotton evidenced by the receipts to the party adjudged to be the rightful owner thereof, and prayed that Chris Keenan and Weil Bros.,

Inc., be summoned into court, and that the issue be determined as to which of the parties was the legal owner of the warehouse receipts and the cotton evidenced thereby.

Chris Keenan filed his answer and cross-bill in response to the bill of interpleader of the compress company, in which he admitted that he was the grower and owner of the cotton; that he placed the same, as he had a right to do, in the warehouse, and received negotiable warehouse receipts therefor. He further alleged that Anderson Spencer unlawfully acquired possession of the said receipts by stealing them, and unlawfully appropriating them to his own use after so stealing them, and sold the cotton represented by the receipts to Weil Bros. and surrendered the receipts to it; that thereby Weil Bros. acquired no title to the said warehouse receipts for the cotton, and that Weil Bros. had no legal or equitable right or claim thereto; that Anderson Spencer was a negro, and the receipts were in the name of Chris Keenan; that Spencer had no right or title to the same and no right to sell the same; and that since Spencer was not a cotton buyer Weil Bros. was put upon notice at the time of the purchase, and if inquiry had been made it would have been revealed to Weil Bros. that the property was stolen. It was specifically alleged that Keenan was the lawful owner of the warehouse receipts, and that they came into possession of Anderson Spencer by artifice, strategy, and grand larceny; therefore, neither Spencer nor Weil Bros. had any title or claim to the warehouse receipts or the cotton. Keenan prayed the court to adjudge on the facts that he was the rightful owner of the warehouse receipts, and prayed also for a decree requiring Weil Bros. to deliver said receipts to him.

Appellant filed its answer in which it charged that Keenan, the owner of the receipts, delivered and intrusted them into the possession of Spencer, together with a sample of the bales of cotton, and that thereby Keenan vested in Spencer the apparent ownership and

title to the receipts and bales of cotton; that it bought the receipts for the cotton in good faith for value without notice, and therefore was the rightful owner of the receipts and the cotton.

The essential facts are that Keenan was a negro about fifty years of age who had been living for some years in the vicinity of Blaine and had been engaged in raising cotton and had been in the habit of storing his cotton in a warehouse. It had been his custom also to leave the receipts for the stored cotton at a store to be delivered on the sale of the cotton. On October 5, 1936, Anderson Spencer, nick-named "Goldbug," procured the receipts in controversy from Keenan under the following conditions and circumstances: In other years Keenan had been in the habit of selling cotton to Shelby Gooch, a cotton buyer at Indianola, and two or three days before the transaction by which Spencer obtained the receipts Gooch had approached Keenan about buying cotton from him. Keenan told Gooch that he would sell him part of his cotton. On Thursday before he obtained the receipts, Spencer approached Keenan, told him that Gooch was on a deal to sell 150 bales of cotton; that Spencer knew Keenan and wanted to help him out, as they were of the same color, and was trying to get Mr. Gooch to buy Keenan's cotton; that Gooch was about to close the transaction for the sale of the cotton, and that in order to get Keenan in on the price on this particular sale by Gooch he would have to have the samples and the receipts. Spencer inquired of Keenan how many bales he had, and indicated to Keenan that the price for the cotton would be about fifteen and a half cents or sixteen cents. Spencer told Keenan that if he could get Gooch to take the cotton he would return and let him know, and to have the receipts ready. On the following Monday morning, October 5, 1936, Spencer approached Keenan at Blaine, told him that Gooch had agreed to take the cotton; that he had told Gooch that he (Spencer) and Keenan were related, and that Gooch had said that the

deal was not to be made public; that Gooch had instructed him to get the receipts and samples and hurry back to Indianola so that the cotton could be reported that evening, so that Keenan could get the big price, and that Gooch could get the money for him from the bank and bring it to Keenan on the same afternoon at Blaine; that Gooch did not have the money to pay for the cotton, but would obtain it on the receipts; and that in order that the deal might be closed it would be necessary for Keenan to promptly send the receipts and samples by him, Spencer. Thereupon, Keenan and Spencer went to the warehouse at Ruleville, where the cotton was stored and the receipts issued, and samples from the several bales of cotton were delivered to Keenan by the agents and officers of the compress company. Thereafter, at the compress, Keenan delivered the receipts and samples into Spencer's possession. Spencer and Keenan were not related.

Keenan testified that he knew that Spencer was representing Gooch; saw him working for Gooch. Keenan waited for Gooch to appear with the money that afternoon at Blaine and on the following day concluded that something was wrong, and began making investigations. He found that Gooch had not sent Spencer to him nor authorized Spencer in any manner to negotiate any kind of purchase of cotton for him. He also found that Spencer had sold some cotton to Weil Bros. at Cleveland, Miss., and had then disappeared; that Jones, agent and manager for Weil Bros. at Cleveland, had purchased the receipts from Spencer and paid him therefor.

Gooch testified that Spencer had been employed as a sampler by him and by other cotton buyers at Indianola for some years, and was so employed by him at the time of this transaction. He knew nothing, however, of Spencer's representations to Keenan, and they were wholly without foundation so far as Gooch was concerned.

Jones testified that he bought the receipts from Spencer and paid him $385.94, a fair market price, on October 5, 1936, the same day the receipts and samples were de-

livered to Spencer by Keenan; that he knew Spencer as a cotton sampler employed by Indianola cotton buyers, but did not know on the day of this sale what business Spencer was engaged in. Jones knew nothing of the deal between Keenan and Spencer. Spencer told him that he was buying some cotton around Blaine, and that he had bought this particular cotton and wanted to sell it. Jones offered him 14 cents a pound, Spencer wanted more, and Jones finally agreed to pay him 14.10 cents, which he considered a fair price. Thereupon, the memorandum of the purchase of the cotton with the samples and warehouse receipts was presented to the bookkeeper who wrote out a check which was signed and delivered to Spencer. The check was cashed promptly. The cotton was bought in the usual ordinary course of business, and Jones testified that he had no reason to doubt Spencer's word; that he bought from "scalpers" every day. He did not notice the name of the person on the warehouse receipts; they were issued to Chris Keenan or bearer.

It appears that Gooch refused to lend Spencer his car for the purpose of seeing about some cotton. Spencer hired a car, but after accomplishing this deal and another, as appears in the record, he disappeared. At the time of the trial, however, he had been sentenced to the penitentiary and appears to have been in court available as a witness on behalf of either party, but he did not testify.

The warehouse receipts in this case were the standard warehouse receipts issued under the Uniform Warehouse Receipts Act, chapter 71, section 3481 et seq., Code of 1930, and were bearer receipts. The court below held that Keenan was entitled to the receipts and the cotton, and entered a decree against Weil Bros. accordingly.

We could with entire confidence rest the decision of this case on the facts and the law as announced in Lundy v. Greenville Bank & Trust Company, Miss., 174 So. 802, but counsel for appellee insist that the decree of the court below should be upheld for the reason that the

evidence shows that Spencer was guilty of larceny in the acquisition of these cotton receipts from the owner, Keenan.

Under the provisions of the Uniform Warehouse Receipts Act, the rights and duties of all the parties are settled. Section 3517, Code of 1930, section 37 of the act, provides that negotiable warehouse receipts, payable to bearer, may be negotiated by delivery. The receipts here involved were issued to Keenan, or bearer.

Section 3520, section 40 of the act, provides that: "A negotiable receipt may be negotiated: (a) By the owner thereof, or, (b) By any person to whom the possession or custody of the receipt has been entrusted by the owner, if, by the terms of the receipt, the warehouseman undertakes to deliver the goods to the order of the person to whom the possession or custody of the receipt has been entrusted, or if at the time of such entrusting the receipt is in such form that it may be negotiated by delivery."

Section 3521, section 41 of the act, sets forth the rights acquired by a person to whom a receipt has been negotiated. It provides that a person to whom a negotiable receipt has been duly negotiated acquired such title to the goods as the person negotiating the receipt to him had or had ability to convey to a purchaser in good faith for value, etc.

Section 3527, section 47 of the act, is as follows: "The validity of the negotiation of a receipt is not impaired by the fact that such negotiation was a breach of duty on the part of the person making the negotiation, or by the fact that the owner of the receipt was induced by fraud, mistake, or duress to entrust the possession or custody of the receipt to such person, if the person to whom the receipt was negotiated, paid or a person to whom the receipt was subsequently negotiated, paid value therefor, without notice of the breach of duty, or fraud, or mistake or duress."

Section 3538, section 58 of the act, has, among other definitions, the following: "A thing is done in 'good

faith' within the meaning of this article when it is in fact done honestly, whether it be done negligently or not.''

Section 3537, section 57 of the act, provides that the act ''shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it.''

It is absolutely uncontrovertible in this case that Keenan intrusted these warehouse receipts, negotiable by delivery, payable to bearer, to Spencer, knowing at the time that Spencer was using falsehood in order to accomplish the proposed sale of the cotton to Gooch. Keenan did not object to Spencer representing to Gooch, as testified, that he and Spencer were relatives. He confided in and trusted Spencer, whose relations with Gooch he knew at the time, to deliver the receipts to Gooch, and thereby set in motion the events which made it possible for Spencer to appropriate the negotiable receipts. Spencer did not acquire the receipts by any kind of trespass. Keenan not only intrusted him with the receipts, but delivered to him the samples of the cotton, thereby, in our opinion, vesting Spencer with every indicia of ownership; and the fact that a conversion of the cotton and the receipts was such as to make him guilty of a larceny by fraud does not in the slightest degree indicate any trespass in the manner by which Spencer obtained possession of the receipts; his possession was by fraud. The validity of the negotiation here is not impaired by the fact that the owner of the receipts was induced by fraud to intrust the custody thereof to Spencer. It may be true that upon the facts here Spencer might be convicted upon an indictment for larceny by fraud, as reflected by such cases as Hanna v. State, 168 Miss. 352, 151 So. 370.

In Commercial National Bank v. Canal-Louisiana Bank & Trust Co., 239 U. S. 520, 36 S. Ct. 194, 195, 60 L. Ed. 417, Chief Justice Hughes said: ''It is a familiar rule that one who has no title to chattels cannot transfer title

unless he has the owner's authority or the owner is estopped.'' The Chief Justice further said: ''It will be observed that 'one who takes by trespass or a finder is not included within the description of those who may negotiate.' '' So far as we are able to ascertain, the exceptions here indicated are the only ones recognized which will invalidate the delivery of a bearer receipt to a purchaser in good faith without notice. Keenan intrusted the possession and custody of these receipts upon a statement made to him by Spencer which was wholly untrue and without foundation, and which was a fraud, but it was Keenan's trust and confidence in Spencer that set in motion the subsequent events.

A prime purpose of the Uniform Warehouse Receipts Act is to make the standard receipts issued by warehousemen for chattels documents of title so that people who honestly purchase these documents for value will be protected by the terms of the act as purchasers in good faith. We are firmly convinced that Keenan delivered the possession and custody of his warehouse receipts to Spencer by virtue of the fraudulent and false statement that Spencer had negotiated a sale of Keenan's cotton to Gooch. Spencer did not acquire that possession by stealing the receipts; Keenan voluntarily delivered the warehouse receipts and the samples of the cotton to Spencer, and exercised his own judgment on the truth of the statement made to him by Spencer. If we should say that Keenan was entirely innocent and that the record does not disclose dishonesty on the part of Jones, the purchaser for Weil Bros., then we have two innocent parties, and the rule is that where one of two innocent parties must suffer from the fraud of a third, he who reposes trust and confidence in the fraudulent agent ought to bear the loss. We think the case is controlled by Lundy v. Greenville Bank & Trust Co., supra; Commercial National Bank v. Canal-Louisiana Bank & Trust Co., supra; Mason v. Exporters & Traders Compress Co., Tex. Civ. App., 94 S. W. (2d) 758; Joy v. Farmers' Na-

tional Bank of Chickasha, 158 Okl. 1, 11 P. (2d) 1074; Southern Pac. Co. v. Bank of America, D. C., 23 F. (2d) 939; Starkey v. Nixon, 151 Tenn. 637, 270 S. W. 980.

We think the evidence we have detailed discloses that Jones, the agent of Weil Bros., bought the cotton from Spencer in good faith, paid value therefor, and that Spencer was invested with the indicia of ownership. The fact that Jones knew that Spencer had been employed theretofore by cotton buyers does not indicate in the slightest degree that he had reason to believe that Spencer was not buying cotton at Blaine; there being no sort of impeachment of Spencer prior to this transaction. When Keenan delivered the warehouse receipts to Spencer, he had more cause to suspect Spencer's honesty than did Jones, the purchaser of the receipts from Spencer. Honesty on the part of a purchaser is the test of good faith, and not negligence, as recited by the statute, quoted supra. We are of the opinion that Weil Bros., Inc., is entitled to retain the warehouse receipts and the cotton.

Reversed, and judgment here for appellant.