## WILKINSON *v.* STATE.

Nov. 3, 1952

No. 38501        6 Adv. S. 33        60 So. 2d 786

*C. F. Cowart, R. B. Reeves* and *Barnett, Jones & Mont-gomery,* for appellant.

*Geo. H. Ethridge,* Assistant Attorney General, for appellee.

ETHRIDGE, J.

Appellant, Fred Wilkinson, was indicted and convicted at the January 1952 term of the Circuit Court of Franklin County of grand larceny, consisting of the theft of three head of cattle. He argues here that the conviction was against the great weight of the evidence, was based upon the uncorroborated testimony of an accomplice, and that he was indicted and convicted under the wrong statute.

The State's case, which the jury manifestly accepted, is in summary as follows: The three head of cattle which were stolen belonged to Douglas Leonard, who at that time was away at college. The cattle had drifted away from their home place, so Lee Leonard, father of Douglas, went out and got them for his son in September, 1950, and put them in Sullivan's pasture. The three cattle escaped in November, 1950, from this enclosure, and strayed away, turning up in about January, 1951, on the place of Lee Ferguson, who held them as estrays for the true owner, whoever he might be. Whittington lived in that area, and had from time to time owned around thirty

head of cattle himself, several of which had strayed away. Appellant Wilkinson lived in Whittington's house and worked on his place as a hired hand. Whittington learned that Ferguson was holding some estrays for the owner, so he and appellant went to Ferguson's place on a Saturday in early March, 1951, to look at them. Whittington told Ferguson that he was looking for some cattle which he had missing, and upon Whittington's request, assented to by Ferguson, Whittington and appellant went down into Ferguson's pasture to look at the estrays. Whittington determined that they were not his cattle, but upon the suggestion and urging of Wilkinson, he pretended that they were and so advised Ferguson. Whittington had an agreement with appellant that he and appellant would sell the cattle, appellant would get $85.00 and Whittington the balance. Whittington paid Ferguson $10.00 for taking care of the cattle and advised him that they would come back the following Thursday morning to get them.

Ferguson believed Whittington's story, and transferred the possession of the cattle to him and appellant when they returned on the next Thursday to get them. He apparently knew both Whittington and appellant prior to this encounter. Whittington carried on the conversations with Ferguson, but Wilkinson was present when the false representations were made. Upon obtaining the cattle from Ferguson, Whittington and appellant took them to a cattle sales lot and sold them. Whittington paid appellant $85.00 and retained the balance of the sale price for himself. The check of the cattle dealer to Whittington for the sale price of the cattle was cashed by him in a store operated by Ransom in the Town of Summit. Whittington and appellant came in together to get Ransom to cash the check. Ransom observed Whittington giving appellant some of the proceeds of it. He heard him ask appellant if he was satisfied. Whittington testified to the same effect. Both Whittington and his wife testified that appellant went with him to look at the cows

and helped to build a wire pen to fence them in. Ferguson testified to the circumstances under which he transferred possession of the cattle to Whittington, as did Farmer, Bowlin and Moore, who were present and assisted in loading the cattle on a truck. Bowlin and Moore testified for appellant that they went along with Whittington to help him load the cattle on the truck and that they never heard appellant claim to own the cows, that they understood the cattle belonged to Whittington. Prior to the trial, Whittington had been indicted and convicted of the theft of the cattle in question, and at the time of the trial was serving a term in the state penitentiary.

(Hn 1) There is no merit in appellant's contentions that the verdict is against the great weight of the evidence and that he should have had a directed verdict because of insufficient evidence to support the conviction. The testimony of appellant's accomplice, Whittington, is reasonable and the jury was warranted in accepting it. It is supported in several particulars by that of Ransom, who cashed for Whittington the check from the cattle dealer, and who saw Whittington give some of the proceeds of it to appellant; and by the testimony of Mrs. Whittington, Farmer, Bowlin, Moore and other witnesses. Hence appellant was convicted on considerably more than the uncorroborated evidence of an accomplice. On the contrary, the accomplice's testimony was supported by that of several other witnesses in various relevant particulars. Under Code of 1942, Sec. 1995, (Hn 2) an accessory to a felony before the fact is considered as a principal.

(Hn 3) Appellant further argues that he was indicted under the wrong statute. He was indicted, tried and convicted under Code Sec. 2240, the grand larceny act, which provides: "Every person who shall be convicted of taking and carrying away, feloniously, the personal property of another, of the value of twenty-five dollars or more, shall be guilty of grand larceny, and shall be imprisoned in the penitentiary for a term not exceeding five years."

Appellant says that he should have been indicted under Code Sec. 2146, dealing with receiving property by falsely impersonating another, which provides: ''Every person who shall falsely represent or personate another, and, in such assumed character, shall receive any money or valuable property of any description, intended to be delivered to the individual so personated, shall, upon conviction, be punished in the same manner and to the same extent as for feloniously stealing the money or property so received.'' Hence it is argued that appellant's motion for a directed verdict should have been granted on the ground that there was a fatal variance between the indictment and the proof.

We do not think that this contention has any merit. In the first place, appellant did not raise this point in the trial court and might therefore be considered to have waived it.

Secondly, the indictment was properly found under the grand larceny statute, Sec. 2240. The general rule is set forth in 32 Am. Jur., Larceny, Sec. 33: ''Although there is some authority to the contrary, **(Hn 4)** the better rule is that one who falsely personates another and in such assumed character receives property intended for such other person is guilty of larceny if he does so with the requisite felonious intent, provided the transaction does not involve the passing of title to the property from the owner to him. Although express statutes to this effect exist in some jurisdictions, **(Hn 5)** it is larceny at common law for a person to pretend that he is the owner or person entitled to personal property in order to obtain possession thereof with the felonious intent of converting it to his own use and depriving the owner of it. Subject to this rule, one who fraudulently claims an estray from the person taking it up or lost property from the finder may be convicted of larceny.''

The distinction, a rather fine one, between the crimes of obtaining property by false pretenses and that of lar-

ceny through obtaining possession by fraud seems to rest in the intention with which the owner parts with possession. 22 Am. Jur., False Pretenses, Sec. 3. Thus **(Hn 6)** if the possession is obtained by fraud and the owner intends to part with his title as well as his possession, the crime is that of obtaining property by false pretenses, provided the means by which it is acquired comply therewith. But if the possession is fraudulently obtained with a present intent on the part of the person obtaining it to convert the property to his own use, and the owner intends to part with his possession merely and not with the title, the offense is larceny. 22 Am. Jur., False Pretenses, Sec. 3; 35 C. J. S., False Pretenses, pp. 638-640. This distinction has been made in a number of Mississippi cases: Watson v. State, 36 Miss. 593 (1859); Akroyd v. State, 107 Miss. 51, 64 So. 936 (1914); Hanna v. State, 168 Miss. 352, 51 So. 370 (1933); Foster v. State, 123 Miss. 721, 86 So. 513 (1920); Dukes v. State, 181 Miss. 704, 181 So. 508 (1938); Garvin v. State, 207 Miss. 751, 43 So. 2d 209 (1949); Williams v. State, 209 Miss. 902, 48 So. 2d 598 (1950). These same cases also support the rule that the fact that defendant obtained possession openly and not secretly and surreptitiously does not negative the felonious character of the act, provided the requisite elements of the crime exist.

At common law, for a person to pretend that he was the owner of the property in order to get possession of it with the felonious intent of converting it to his own use constituted larceny. See Anno., 26 A. L. R. 381, 389; 97 A. L. R. 1510. Accordingly convictions of larceny have been sustained where a person has fraudulently claimed an estray from the person taking it up, and where a person has claimed to be the owner of lost property from the finder. 26 A. L. R. 381, 389. McKinney v. State, 12 Ala. App. 155, 68 So. 518 (1915), is pertinent on this point. And Atterberry v. State, 19 Tex. App. 401 (1885), involved these facts: Sims owned a farm in Denton County, Texas, and was in his field when defendant and Beam

first rode up to his yard gate. Sims had been advertising that he had possession of some estray cattle and was holding them for the true owner. Defendant and Beam rode out into the pasture and after a short time returned with the estrays. They told Sims that they had seen his advertisement of them, and that they owned an equal interest in the cattle. Sims believed them, and transferred possession of the estrays to defendant and Beam. Sims later learned that the cattle really belonged to Thomas. The court affirmed appellant's conviction for grand larceny. It said that if the possession was obtained by a false pretext or with intent to appropriate the property, the offense of theft is complete; that Sims' consent was obtained by the fraudulent pretext of defendant and Beam that they were the owners of the cattle; that "under an ordinary indictment for theft, a conviction can be had on proof that the taking, though with the owner's consent, was obtained by false pretext and with intent to deprive the owner of the value of the property and appropriate it to the use and benefit of the taker."

The foregoing authorities support the conviction under the general grand larceny statute, Sec. 2240. The distinction rests upon the intention with which the owner or possessor parts with possession. Here the possessor of the estrays, Ferguson, obviously had no intent to part with any title to the estrays. Like Sims in the *Atterberry* case, Ferguson thought he was transferring simply the possession back to the true owner. This accords with the principle that if possession is fraudulently obtained, with present intent on the part of the person obtaining it, to convert the property to his own use, and the owner or possessor intends to part with his possession merely and not with the title, the offense is larceny, 22 Am. Jur., False Pretenses, Sec. 3; 32 Am. Jur., Larceny, Sec. 33; Akroyd v. State, supra; Hannah v. State, supra; Dukes v. State, supra. The crime for which appellant was convicted constitutes grand larceny both at common law and

under Code Sec. 2240. Moreover, Sec. 2146, even if applicable, does not exclude the use of the grand larceny statute as to facts constituting that crime at common law.

Another reason why Code Sec. 2146 is not applicable to this crime is that the terms and apparent purposes of that act are not pertinent to the instant facts. Appellant did not "falsely represent . . . another." He did not pretend to be the agent of anyone. He simply advised Ferguson, who held the estrays, that he was the owner. Nor did appellant "falsely . . . personate another, and, in such assumed character" obtain possession of the cattle. He did not, for example, tell Ferguson that he was Douglas Leonard, who was the true owner, or someone else. There was no impersonation of any assumed, particular person. Section 2146 appears to be intended to be limited to such types of circumstances. However, we do not undertake to outline the boundaries of that statute, other than to say that it is not relevant to the instant facts.

Affirmed.

*McGehee, C. J.,* and *Lee, Kyle,* and *Arrington, JJ.,* concur.