ROBERTSON, Presiding Justice,
for the Court:
Betty Russell was indicted, tried and convicted in the Circuit Court of Lauderdale County of obtaining $4750, a diamond ring and gold band valued at $2,000, from the owner, Ollie Cálmese, by false pretenses. She was sentenced to serve a term of three years with the Department of Corrections and fined $10,000. She appeals, assigning as error:
1. The trial court erred in failing to sustain Appellant's demurrer to the indictment for duplicity, in failing to grant her motion for mistrial as the other charge was proven and in failing to delete references to the other charge in the instruction thereof requested and granted the state.
*988 2. The trial court erred in failing to grant a mistrial when requested by Appellant on grounds that the state had shown proof of another separate and distinct crime by other persons against the same victim on the day after the crime charged.
3. The trial court erred when it permitted introduction of the instrumentalities of a crime seized from the Appellant which had no relevancy to the crime charged and when it thereafter failed to grant Appellant a mistrial by reason of the evidence.
About 10:00 A.M., May 2, 1979, Ollie Cálmese, an 83-year-old black male, went to the Village Fair Mall in Meridian, Mississippi, to have shoes repaired. While he sat in the main concourse of the Mall waiting for his shoes to be repaired, a black woman sat down beside him and began talking to him. Shortly thereafter another black woman came up, sat down beside them, and told them that she had found something but didn’t know where to turn it in. The first woman inquired as to what she had found, whereupon the second woman opened an envelope and took out a card saying the envelope contained about $17,000. The so-called finder stated that if they wouldn’t say anything about it she would give them $150. Cálmese told her that he wanted no part of it. One of the women asked him if he had any money, and he answered that he had some at home. It was suggested by the two women that they go to his home and get his money, so that he could put up some good faith money and then they would divide the money in the envelope among the three of them.
They left the Mall in Calmese’s automobile, with one of the women driving. One of the women went into the room with him to get his money. Defendant was pretending to use the telephone, but was so situated where she could see everything that was going on. Cálmese gave the woman with him $4,750. She folded the money and put a rubber band around it and handed it back to him to keep in his inside coat pocket. While in the room getting the money, the woman with him noticed that there was a diamond ring and a gold band in a jewelry box underneath a handkerchief. She had opened the box and when Cálmese noticed her looking at the rings he closed the jewelry box and put it back underneath the handkerchief. The woman with him immediately asked for a drink of water, and Cálmese went with her to the kitchen to get a drink of water.
All three then returned to Calmese’s car, and the other woman again drove his car with Cálmese sitting on the front seat with her and the defendant, Betty Russell, sitting on the back seat.
On the way back to the Mall, defendant suggested that Cálmese give her the money so she could wrap it up for him. Defendant wrapped it in a white handkerchief and handed it back to Cálmese, who started to put it in his coat pocket but defendant said “No, put it in your inside pocket so you won’t lose it.” Cálmese put the wrapped money in his inside coat pocket.
When they got back to the Mall and had parked the car, the two women suggested that Cálmese go back into the Mall and meet them a short time later by Morrison’s Cafeteria. He waited for them for some time, but when they did not appear, decided to get his repaired shoes and go home. When he got home he took the packaged money out of his inside coat pocket, untied it and took off the handkerchief to see if his money was all there. He found nothing but a piece of brown paper rolled up to resemble his money. He then went to check on the diamond ring and gold band; both of the rings were gone. He was so distraught and worried that he didn’t tell anybody about it until the next day.
On the morning of May 3rd, two black males posing as detectives appeared at his home and showed him two rings which they said they had recovered. Cálmese recognized these as his diamond ring and gold band. That afternoon he reported the theft of his money and the two rings to the police, and also told the police about the two black men posing as detectives who showed him the two rings stolen from him *989 the day before. Late that night Detective Griffin picked up Cálmese and brought him to the jail to see if he could identify a suspect that they had picked up. The lineup consisted of five black women and Cálmese tentatively identified number 3 as being the woman to whom he had given his money for wrapping and returning to him.
About 4:00 the next morning, Cálmese phoned the police station and told them that his Saviour, Jesus Christ, had revealed to him in a vision that number 3 in the line-up was positively the one that had taken his money, and he instructed the police to hold number 3 because she was definitely the one that had relieved him of his money.
At the trial, Sergeant Moore and Detective Lewis testified that about 8:45 the night of May 3rd they were taking a coffee break at the Holiday Inn when they noticed two black females fitting the description given the police by Cálmese. With the permission of Judy Robinson in whose name the room was registered, they searched this room occupied by Judy Robinson and defendant Russell. They found several envelopes containing play money. Two plastic pouches, containing a number of $1.00 bills and one $5.00 bill, were found.
Defendant Russell was arrested and later indicted. The indictment read:
“That Betty Russell in said County, on the 2nd day of May, A.D., 1979, did felo-niously, unlawfully and wilfully falsely represent to Ollie Calmes a scheme, plan and story about a lucrative discovery of lost money and division of the proceeds of said lost money between herself, an unknown party and Ollie Calmes; when in truth and in fact said lost money did not exist all of which was then and there well known to the said Betty Rusell and unknown party, to the said Ollie Calmes with the intent to cheat and defraud Ollie Calmes by said false pretenses and did wilfully, feloniously and unlawfully obtain from Ollie Calmes Four Thousand Seven Hundred Fifty Dollars ($4,750.00) in good and lawful currency of the United States of America, a diamond ring and gold band of the value of Two Thousand Dollars ($2,000), property of the said Ollie Calmes, in violation of Section 97-19-39 of the Mississippi Code 1972 Annotated.”
Garvin et al. v. State, 207 Miss. 751, 43 So.2d 209 (1949), was a pigeon-dropping case similar to the case at bar. One difference, however, was that the good faith money had been delivered by Leon Cooks (the pigeon) to Garvin and Rhodes (the pigeon droppers). Garvin and Rhodes were indicted, tried and convicted of grand larceny. In affirming the conviction and sentence, this Court said:
“The contention of the State that the obtaining and keeping of the money, under the facts and circumstances to be hereinafter stated, constitutes the crime of grand larceny instead of obtaining money under false pretenses, is sustained by the principles announced in the cases of Courtney v. State, 174 Miss. 147, 164 So. 227; Foster v. State, 123 Miss. 721, 86 So. 513; Dukes v. State, 181 Miss. 704, 181 So. 518; and Alford v. State, 193 Miss. 153, 8 So.2d 508. That is to say, that where any personal property is fraudulently obtained under such circumstances from an owner who intends that the title thereto shall not pass, the offense is grand larceny, but where he intends that the ownership or legal title should pass the offense is that of obtaining money under false pretenses.” 207 Miss. 754-55, 43 So.2d at 210.
In the case at bar, there is no evidence that Cálmese intended to invest either title or possession of his money in the defendant. During the return trip to the Mall, Cálmese delivered his money to the defendant to be wrapped in a handkerchief. The wrapped money was then returned to Cálmese with instructions from the defendant to place in an inside coat pocket for safekeeping. Cálmese thought that he had possession of his money and kept his hand pressed against it until he got home and opened it up.
In Conn v. State, 228 Miss. 833, 89 So.2d 840 (1956), this Court stated:
*990 “It is well-settled by the decisions of this Court that where the possession of personal property is fraudulently obtained, there being no intention on the part of the owner that ownership or legal title shall thereby pass, and the person who obtains possession intends to deprive the owner of said property, and in pursuance of such intent does deprive the owner thereof, the offense is larceny. Hanna v. State, 168 Miss. 352, 151 So. 370; Dukes v. State, 181 Miss. 704, 181 So. 518; Ware v. State, 186 Miss. 533, 191 So. 678; and Jones v. State, 223 Miss. 812, 79 So.2d 273.” 228 Miss. at 843, 89 So.2d at 844.
In Woodfork v. State, 377 So.2d 912 (Miss.1979), we said:
“In a false pretense case, the owner, in parting with his property, must intend to invest the recipient with title, as well as possession. Jones v. State, 223 Miss. 812, 79 So.2d 273 (1955); Courtney v. State, 174 Miss. 147, 164 So. 227 (1935).” 377 So.2d at 915.
In view of the fact that there was no evidence that Cálmese intended to part with either ownership or possession of his money at the time he delivered it to the defendant, the defendant was not guilty of the crime of obtaining money by false pretenses. Under proper indictment, the jury could have found Russell guilty of grand larceny.
We move on to the other assignments of error. Cálmese testified positively that the defendant was the one who had wrapped his money and handed it back to him, and one of the two women who had participated in every phase of the pigeon-dropping operation.
We feel that the trial court was correct in admitting into evidence, over defense counsel’s objection, the pigeon-dropping paraphernalia found in the motel room jointly occupied by defendant and Judy Robinson, under the authority of Wilkins v. State, 264 So.2d 411 (Miss.1972).
The conviction and sentence are reversed and this cause remanded for a new trial on a proper indictment, if such should be returned by another grand jury.
REVERSED AND REMANDED, WITH DEFENDANT TO REMAIN IN CUSTODY PENDING ACTION OF ANOTHER GRAND JURY.
PATTERSON, C. J., SMITH, P. J., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.