THE STATE OF KANSAS v. GEORGE GORDON.

No. 10130.

1. FALSE PRETENSES—*Case Within the Statute*. The mere fact that a false pretense of an existing or past fact, by reason o which the owner of money or property is induced to part with the same, is accompanied by a future promise, will not take the case out of the operation of the statute which prohibits and punishes the obtaining of money by false pretenses.

2. INFORMATION—*Name—Variance*. In the information charging the offense the name of the injured party was alleged to be Henry Trenier and the testimony showed his full name to be Henry Guild Trenier. *Held*, Not to be a fatal variance.

3. CONVICTION, *Sustained*. The evidence examined, and *held* to be sufficient to sustain the conviction.

*Appeal from Shawnee District Court.*

AN information was filed in the district court of Shawnee county, in which it was charged that

"George Gordon, at the county of Shawnee, in the state of Kansas aforesaid, and within the jurisdiction of this court, on the 30th day of August, 1894, unlawfully, fraudulently, falsely, knowingly, designedly and feloniously devising and intending to cheat

and defraud one Henry Trenier, did then and there unlawfully, falsely, fraudulently, knowingly, designedly and feloniously pretend and represent to said Henry Trenier that he, the said George Gordon, and an Indian, were the owners and possessors of a certain valuable bar or brick of gold of great value, to wit, of the value of $10,000, said gold bar or brick being then and there in Shawnee county, Kansas, which said gold bar or gold brick they, the said George Gordon and said Indian, were about to take to the United States mint at Philadelphia, Pa., to be coined into money; that said Indian would not allow said gold bar or gold brick to be taken to said mint unless he received a certain sum of money on his interest in said gold bar or gold brick; that if he, the said Henry Trenier, would give to him, the said George Gordon, the sum of $1,000 to pay to said Indian on his share in said gold bar or gold brick, he, said George Gordon, would deliver to him, said Henry Trenier, said gold bar or gold brick, to be by him, the said Henry Trenier, taken to said United States mint and coined into money, and that he, said Henry Trenier, should have a third interest in the money coined from said gold bar or gold brick, said interest to be of the value of about $3,000; which said pretenses were then and there made by the said George Gordon to the said Henry Trenier with the design and for the purpose of inducing the said Henry Trenier to advance and pay him money; and the said Henry Trenier, relying upon and believing said false pretenses and representations to be true, and being deceived thereby, was then and there induced by reason thereof to deliver to said George Gordon the sum of $35 lawful money of the United States; by which said false pretenses the said George Gordon, then and there, with intent to cheat and defraud, did unlawfully, fraudulently, feloniously, falsely, knowingly and designedly obtain of the said Henry Trenier, and of the money and personal property of said Henry Trenier, $35 lawful money of the United States of America, the kind, number, denominations and amounts of

5—56 KAS.

which are to this affiant unknown, and a more par-
ticular description of which this affiant is unable to
give, of the value of $35; whereas, in truth and in
fact, each and all of the said representations were
false and fraudulent, and the said George Gordon
knew them to be false and fraudulent at the time he
so made them to said Henry Trenier; and whereas,
in truth and in fact, the said George Gordon and said
Indian were not the owners and possessors of a cer-
tain valuable brick or bar of gold, of great value, and
said gold brick or gold bar was not then and there in
Shawnee county, Kansas; and whereas, in truth and
in fact, said George Gordon and said Indian were not
about to take said gold bar or gold brick to the United
States mint at Philadelphia, Pa., to be coined into
money, all of which the said George Gordon then and
there well knew; contrary to the form of the statute
in such case made and provided, and against the
peace and dignity of the state of Kansas.''

A motion by the defendant to quash the informa-
tion was overruled, and upon a trial a verdict of
guilty was rendered. The judgment of the court was
imprisonment in the penitentiary at hard labor for a
term of five years, and from this judgment the defen-
dant appeals.

*Waters & Waters*, and *W. C. Webb*, for appellant.

*F. B. Dawes*, attorney general, *H. C. Safford*, county
attorney, and *A. J. McCabe*, for The State.

The opinion of the court was delivered by

JOHNSTON, J.: The substantial charge upon which
a conviction was obtained was that Gordon unlawfully
obtained from Trenier the sum of $35 by falsely and
fraudulently pretending that Gordon and an Indian
owned and then had in their possession in Shawnee
county a gold brick or bar of the value of $10,000,
when in truth and in fact they did not own or possess

such gold brick or bar.    Some matters are alleged in
the information relative to the future actions and con-
duct of the parties, and it is argued that these do not
amount to false pretenses within the statute, and, as
these were the main representations in the information,
that no crime was charged.    As will be seen, however,
the substantial features of the charge were representa-
tions and assurances of present existing facts, viz., that
Gordon and the Indian were then the owners and
possessors of a valuable gold brick, which they then
had in Shawnee county, and that they were then on
their road to take the gold brick to the United States
mint at Philadelphia to be coined.    It is alleged that
on the faith of these representations and
the assurance of those facts the money was
obtained from Trenier.    The mere fact that
a false pretense of an existing or past fact
is accompanied by a future promise will not relieve
the defendant or take the case out of the operation of
the statute.    Besides,

1. False pre-
tenses—case
within the
statute.

"It is not necessary, to constitute the offense of ob-
taining goods by false pretenses, that the owner has
been induced to part with his property solely and en-
tirely by pretenses which are false ; nor need the pre-
tenses be the paramount cause of the delivery to the
prisoner.    It is sufficient if they are a part of the
moving cause, and without them the defrauded party
would not have parted with the property." (*In re
Snyder,* 17 Kan. 542.)

Further than that, it appears that the district court
in charging the jury eliminated all immaterial matters,
and submitted the case only upon such representations
as amounted to false pretenses under the statute.

The name of the injured party, as alleged in the in-
formation, is Henry Trenier, and in the testimony it
appears that his name was Henry G. Trenier, or Henry

Guild Trenier, and it is contended that the misnomer or variance is fatal. It appears that some of the witnesses called him Henry Trenier, and on several occasions Trenier, in giving his own name, omitted the middle initial or name. It does not appear that this objection was raised in the trial court; but in any event we do not think that the defendant suffered any prejudice by reason of the omission of the middle letter or name, nor do we regard the variance between the pleading and the proof in this respect to befatal. (*The State v. Watson*, 30 Kan. 282; *The State v. Blackman*, 32 id. 615; *The State v. Drake*, 33 id. 151; *The State v. Rook*, 42 id. 419; *The State v. Flack*, 48 id. 146; 16 Am. & Eng. Encyc. of Law, 114, and cases cited.)

2. Information
—name—
variance.

It is next contended that the testimony fails to establish the charge, and particularly that it did not prove that the bar or brick was not genuine gold. It appears that Trenier is a farmer, about 70 years of age, who resided near Holton, Kan.; that he is in moderate circumstances, and has fair financial credit. Gordon came into the neighborhood, and, after making some inquiries concerning Trenier, approached him and professed to be searching for an uncle by the name of Henry Trenier, who used to work with him in the mountains of Alaska. He stated that Trenier, to whom he was speaking, was not his uncle, and that he would go in search of him to St. Joseph, where he was last heard from; and after a few days he returned and told Trenier that he had been unable to find his uncle, but that he had found an aunt who said that he was dead. He then took Trenier to one side, and informed him that he and an Indian had found a rich vein of gold in Alaska, and were now on their way to the mint to have coined a bar of the gold which they

had brought with them, but that, as he was illiterate and liable to be cheated, he desired to have Trenier accompany and protect them, and that after the mineral had been coined they would return to the mountains where all would get rich. He informed Trenier that the gold bar was then in the possession of the Indian in the woods near Topeka, and that Trenier should have an interest in the same. They went together to the edge of the woods, where Gordon left Trenier with the information that it would not do to have the Indian see Trenier, and soon afterward returned with a pair of balances, a brace and two bits, and a sack containing the brick. Gordon professed not to understand the figures on the balances, and asked Trenier to weigh the brick, which he did, and it was found to weigh 40 pounds. With the brace and bit they bored into the brick, obtaining some chips, which were wrapped up and carried by Gordon back into the woods for the purpose of having the Indian melt them into a nugget. He also carried with him the brick, balances, brace and bits into the woods, and shortly returned with a nugget, which they took to Topeka for the purpose of having it tested. After some considerable search they came upon one F. D. Fisher, evidently a confederate, who professed to be able to test minerals, and after making a test he informed Trenier that it was worth $20 an ounce or $240 a pound, and that the entire brick was worth $10,000. Gordon, claiming not to be acquainted with figures, requested Trenier to ascertain what one-third of the amount would be, and when the computation was made he insisted that Trenier should have one-third of the value of the same. Gordon informed Trenier that the Indian would not let the brick go to the mint unless he got some money for

it, and Trenier then gave Gordon $40, but $5 of the sum was returned by Gordon with the statement that perhaps the Indian could be persuaded to let it go for the remainder. After a while Gordon came back and reported that the Indian would not let the bar go unless Trenier would pay him $1,000 on it, and asked Trenier if he could procure that amount. Trenier then went to Holton to obtain the money, and did borrow what he supposed was $1,000 from one of the banks at that place. It appears that the bank by inquiry ascertained that Trenier was being swindled, and they gave him a package said to contain and which was marked "$1,000," but which in fact was nothing more than a package of blank checks and notes. Trenier returned to Topeka, and after making some arrangements with Gordon in relation to going to the mint he delivered to Gordon the package supposed to contain $1,000. About the time the package was delivered, an officer, who had been watching the transactions, arrested Gordon, and took from his person about $30 in money, which was returned to Trenier. There are many other circumstances attending the transaction, some of them of the most ridiculous character, but a recital of which is now unnecessary. While the gullible old man was actually deceived by the flimsy tricks and absurd representations of Gordon, it is plain that, when all the circumstances connected with the transaction are considered, very little proof was necessary to sustain the charge that there was no gold in the brick said to have been brought from the mountains of Alaska. However, when Gordon was arrested he furnished proof that it was not a brick of gold. The officer who took him into custody demanded from him the $1,000 package and the gold brick, but he replied that he knew nothing about the gold brick.

As he was familiar with the character of the brick which they had with them, his positive assertion that he knew nothing of a gold brick is sufficient under the circumstances to sustain the finding that it

3. Conviction. sustained.    was not made of gold.    We think the testimony was sufficient to sustain the verdict.

The charge of the court is criticized, but an examination of the same shows that the case was fairly submitted to the jury, and that there is nothing substantial in the objections urged against it.

The judgment of the district court will be affirmed.

All the Justices concurring.