## THE STATE OF KANSAS v. WILLIAM WARDEN PIPES.
### No. 13,109.   (70 Pac. 363.)

#### SYLLABUS BY THE COURT.

1. CRIMINAL PRACTICE— *Substitution of Real Name of Defendant.* Where a defendant alleges that his name is other than the one by which he is designated in the information filed against him, and declares his real name, and the court orders that such name be substituted and that all further proceedings be conducted in the name given by him, which is done, it is not essential that the information be amended with respect to the name.

2. —————— *Name by Which Defendant is Generally Known Sufficient.* Ordinarily, if the name used in criminal proceedings is the one by which a person is generally known, it will be sufficient, and the fact that the name by which the defendant was generally known was the one under which the prosecution was begun and the preliminary examination conducted, and not the real name subsequently declared by the defendant, will not render the preliminary examination invalid.

3. —————— *General Reputation— Cross-examination.* Where a witness testifies to the defendant's general reputation, considerable latitude may be given in a cross-examination as to his opportunities for knowledge of the defendant's reputation and as to the basis of his opinion.

4. —————— *Crime not Condoned by Previous Good Character.* A defendant is entitled to the benefit of the weight of previous good character in the determination of the question whether he is guilty of the crime charged against him, but a crime is not condoned because of previous good character.

Appeal from Ellis district court; LEE MONROE, judge.   Opinion filed October 11, 1902.   Affirmed.

*A. A. Godard*, attorney-general, *J. P. Shutts*, county attorney, and *W. E. Saum*, for The State.

*H. J. Harwi*, and *W. M. Roberts*, for appellant.

The opinion of the court was delivered by

JOHNSTON, J. :  William Warden Pipes was prosecuted for the murder of David Leahy and was convicted of murder in the second degree.   In his appeal

he complains, first, of the refusal of a continuance applied for on account of the absence of a witness. From the record, however, there appears to have been a lack of diligence on his part in the effort to procure the testimony, and "diligence alone makes a continuance compulsory." (*The State v. Rhea*, 25 Kan. 576; *The State v. Lewis*, 56 id. 374, 43 Pac. 265.)

In the complaint before the magistrate and in the information filed in the district court, the defendant was designated as "Ward Pipes." He interposed a plea in abatement alleging that his name was "William Warden Pipes." The court accepted his statement and directed that all further proceedings in the case be conducted under the name of "William Warden Pipes." This procedure was strictly in accordance with statutory provision. (Crim. Code, § 224; Gen. Stat. 1901, § 5669; *The State v. McGaffin*, 36 Kan. 315, 13 Pac. 560; *The State v. Haist*, 52 id. 38, 34 Pac. 453.) It is not important that the information was not amended with respect to the name, since the order of the court in effect amended the information; nor did it afford a good reason for sustaining the motion to quash on that ground, nor the plea that he had not had a preliminary examination. The name "Ward Pipes," by which he was designated in the preliminary proceedings, appears to have been the one used by his own witnesses when speaking of him, and by his counsel when referring to him during the trial. If the name used in the proceedings was the one by which he was generally known, it was sufficient, and certainly no prejudice was suffered by him because of the use of the abbreviated name by which he was generally known in the preliminary proceedings, instead of his full name, under which the later proceedings were conducted. (*The State v. Gordon*, 56 Kan. 64. 42 Pac. 346.)

Complaint is made of the cross-examination of the defendant's witnesses who had testified as to the general reputation of the defendant as a peaceable and law-abiding citizen.   Where a witness states that he is acquainted with the general reputation of a party, and that it is good, a wide latitude is allowed in cross-examining him as to his opportunities for knowledge and as to the basis of his opinion.. Most of the witnesses who testified as to the defendant's general reputation appear to have given their own individual opinions of the defendant rather than the reputation which he bore in the neighborhood. While considerable scope was given to the cross-examinations and some of the questions may not have been strictly within the rule, the substantial rights of the defendant do not appear to have been violated.

Much complaint is made of the refusal of requests for instructions.   Some of those refused stated the law correctly, but, generally speaking, the principles of law embodied in them were presented to the jury in instructions framed and given by the court ; for instance, there was a refusal of one as to self-defense, which included the idea that a person assailed might act on an honest belief of apparent danger in repelling the attack, even to the extent of killing his assailant, and would not be responsible if it turned out that there was, in fact, no real danger. This principle was included in the following instruction, which was given :

"If a person is assaulted by another in such a manner as to give him reasonable grounds to believe that there is a design on the part of his assailant to take his life or to do him great bodily injury, and that there is immediate danger that such design will be accom- plished, and if he honestly believes that such design on the part of his assailant and such danger to him-

self actually exist, then he has the right to stand his ground and to use such force as shall on reasonable grounds honestly appear to him to be necessary to repel the attack, even to the extent of killing his antagonist. A person when so assailed will be justified in defending himself, though the danger may not be real but only apparent. He will not be responsible criminally if he acts in self-defense from real and honest convictions as to the character of the danger induced by reasonable evidence, although he may be mistaken as to the extent of the actual danger.''

The court further stated, with reference to the same subject, that if the deceased was the aggressor and the defendant had reasonable ground to believe that the deceased intended to take his life or do him great bodily injury, and if he actually and honestly believed that the deceased had such a design and that he was in real danger, he had the right to act upon the situation as it appeared to him in defending himself. The instructions on the subject of self-defense appear to be in line with the previous rulings of this court.

It is contended that, in an instruction given, the court neutralized the evidence offered by the defendant as to character by a statement that previous good character is not a defense to a crime clearly proved. It is true that crime is not condoned or excused because of previous good character, but the defendant is entitled to the benefit of the force and weight of previous good character in the determination of the question whether he has committed a crime. (*The State v. Keefe*, 54 Kan. 197, 38 Pac. 302.) The trial court gave this benefit to the defendant in charging the jury that such evidence must be considered by them, and that, if such evidence, or such evidence in connection with other evidence, raised a reasonable doubt of the defendant's guilt, they should acquit him. Nothing in

the instructions is inconsistent with this statement or with the law relating to the weight and importance to be given to good character.   We find nothing in the instructions which affords ground for reversal, and, after reading the testimony, we are satisfied·that it is abundantly sufficient to sustain the verdict, of the jury.

Finding no error in the record, the judgment of the district court will be affirmed.

All the Justices concurring.