# S. P. CROSBY v. WILLIAM A. PAINE AND OTHERS.[1]

January 21, 1927.

No. 25,700.

**Distinction between common law larceny and false pretenses.**

1. Where a person induces the owner by fraud to part with the possession but not with the title to property, and thereafter unlawfully converts it to his own use, he is guilty of common law larceny; but where he induces the owner by fraud to part with both possession and title, he is not guilty of common law larceny, but of obtaining property by false pretenses.

**When owner of property cannot recover it from bona fide purchaser.**

2. Where the owner, although induced to do so by false representations, delivers property to another to be·sold, and such other sells it to a bona fide purchaser, the owner cannot recover from the purchaser.

**Plaintiff has burden of showing title of bona fide purchaser is defective.**

3. Plaintiff having attacked the title of a bona fide purchaser had the burden of showing the title defective.

**Statements of person making the sale excluded.**

4. Statements made to plaintiff after the sale by the one who made the sale were properly excluded.

False Pretenses, 25 C. J. p. 657 n. 25.
Larceny, 36 C. J. p. 774 n. 81; p. 777 n. 13.
Sales, 35 Cyc. p. 362 n. 43; p. 364 n. 68; p. 365 n. 72.
Trover and Conversion, 38 Cyc. p. 2009 n. 16.

Plaintiff appealed from an order of the district court for Ramsey county, Boerner, J., denying his motion for judgment notwithstanding the verdict or a new trial. Affirmed.

*George G. Chapin* and *Frederick N. Dickson,* for appellant.

*Selover, Schultz, Mansfield & Bryan,* for respondents.

[1]Reported in 211 N. W. 947.

TAYLOR, C.

Action to recover the value of six bonds or certificates of stock in a loan, each for the sum of one thousand pounds sterling, issued by the government of Brazil, and alleged to have been wrongfully converted to their own use by defendants. The jury found for defendants and plaintiff appealed from an order denying his alternative motion for judgment or a new trial.

On February 9, 1922, plaintiff was the owner of the bonds in controversy, having purchased them some months before from Stevens & Company, a corporation dealing in bonds and other securities. Plaintiff was a stockholder in that company. On February 9, 1922, Stevens & Company asked plaintiff to loan them these bonds, representing that they had a customer for six thousand pounds of Brazilian bonds the same as his, and that they had other bonds of the same nature and denomination on the road and would return them to him in a few days. Plaintiff consented and gave them the bonds. Whether they had a customer for such bonds does not appear, but the probabilities are that they did not. In any event on the same day on which they obtained the bonds, they took them to the office of defendants, who are large dealers in bonds and securities, and sold them to defendants for the sum of $13,875, the market price for such bonds on that date. They failed to return these or similar bonds to plaintiff as agreed, and on his demand for their return gave him bonds issued by a cattle company of Montana as security therefor. Shortly thereafter they were adjudged bankrupt. From cases reaching this court, it appears that they had engaged in many fraudulent transactions and practices about the time of these transactions. It turned out that the bonds given plaintiff as security did not belong to them and plaintiff was forced to surrender these bonds to the owners. Learning that the bonds obtained from him had been sold to defendants, plaintiff brought this action.

At the trial plaintiff claimed that the bonds were delivered to Stevens & Company merely for the purpose of being exhibited to a customer and were to be returned to him. Defendants claimed that they were given to Stevens & Company to be sold and delivered to

a customer of that company and were to be replaced by other bonds of like tenor and denomination when such other bonds arrived.

The court instructed the jury to the effect that if the bonds were delivered to Stevens & Company for the purpose of being exhibited to a customer and with the understanding that they were to be returned to plaintiff, plaintiff would be entitled to a verdict; but if they were delivered to Stevens & Company for the purpose of being sold to a customer and with the understanding that other similar bonds were to be returned to plaintiff, defendants would be entitled to a verdict. The verdict establishes as a fact that the bonds were delivered to Stevens & Company for the purpose of being sold to a customer of that company and with the understanding that other similar bonds were to be returned to plaintiff. The transactions on the part of Stevens & Company, involved herein, were conducted by the two managing officers of that company, but for convenience we shall use the name Stevens & Company in referring to their doings.

Defendants insisted and still insist that the bonds were negotiable instruments; plaintiff insisted and still insists that they were not. The court charged the jury that they were nonnegotiable; and for present purposes we shall assume without deciding that this instruction was correct.

Plaintiff contends that the acts of Stevens & Company in obtaining and selling these bonds constituted common law larceny; that defendants could acquire no title from or through them for that reason, and that he is entitled to recover under the rule which permits the owner to pursue and reclaim stolen property other than negotiable paper wherever he may find it.

We cannot sustain the contention that the acts of Stevens & Company constituted common law larceny as distinguished from the crime of obtaining property by false pretenses. Where the wrongdoer by fraud induces the owner to part with the possession but not with the title to his property and thereafter feloniously disposes of it, he is guilty of common law larceny; but, where he induces the owner by fraud to part voluntarily with both possession and title, he is not guilty of larceny, but of obtaining property by false pre-

tenses. The distinguishing element between the two is whether the owner intended to part with possession only or expected and intended to part with both possession and title. This distinction is recognized by an almost unbroken line of authorities. 18 Am. & Eng. Enc. (2d ed.) page 469, states:

"It is well settled that a taking within the definition of larceny occurs where a person, by means of some fraud or trick, and with intent to steal, procures the delivery of goods to him by the owner, unless the delivery is made for the purpose of passing the property or title in the goods as well as the possession."

The same volume at page 481 states:

"If the owner of goods, intending to transfer the title thereto, delivers them to another person, * * * the fact that such a delivery was procured by some fraudulent or deceitful practices, and with the design of cheating or defrauding the owner, will not make the receipt of the goods a taking on which a charge of larceny may be founded."

17 R. C. L. page 13, § 13, states:

"If a person with a preconceived design to appropriate property to his own use, obtains possession of it by means of fraud or trickery, the taking under such circumstances amounts to larceny."

The same volume on page 14, § 14, states:

"If the owner of goods * * * voluntarily parts with both the possession and the title, to the alleged thief, not expecting the goods to be returned to him or to be disposed of in accordance with his directions, then neither the taking nor the conversion amounts to larceny * * * . This rule applies even where the owner is induced to part with the title through the fraud and misrepresentation of the alleged thief. In such cases the crime committed may be obtaining property by false pretenses."

To same effect see 36 C. J. 774, 775, 777; 25 C. J. 657; 1 Bish. Cr. Law (9th ed.) § 583; Clark & Marshall, Law of Crimes (2d ed.)

461; 1 McClain, Cr. Law §§ 563, 659. In the section last cited the author states:

"If the owner parts with his property not expecting to have it back again, and he is induced to do so by what constitutes false pretenses, there cannot be conviction for larceny."

The above authorities cite numerous cases in which the rule is applied.

In the present case plaintiff expected and intended to part with the title as well as the possession. He delivered the bonds to Stevens & Company to be sold and disposed of by them for their own benefit in a transaction with which he was in no way concerned. They were not to be disposed of according to his directions nor for his benefit. The fact that Stevens & Company pretended that they wanted the bonds for an undisclosed customer, and may not have had a customer, did not change the nature of their acts or prevent them from conveying title to a purchaser. The undisputed evidence shows that defendants bought the bonds in the usual course of business for the market price and with no knowledge that plaintiff had or ever had any interest in them, or that they were not the absolute property of Stevens & Company. Whether negotiable or not, the bonds were transferable by delivery; and there is nothing to impugn the good faith of defendants in purchasing them. As plaintiff delivered the bonds with the understanding that Stevens & Company were to sell and deliver them to a third party, he is not in position to maintain an action for conversion against the purchasers, nor to question their title except for fraud on their part of which there is no claim. Cochran v. Stewart, 21 Minn. 435; Griffin v. Bristle, 39 Minn. 456, 40 N. W. 523; Carlson v. Schoch, 141 Minn. 236, 170 N. W. 195; Mann v. Lamb, 83 Minn. 14, 85 N. W. 827; Nieter v. McCaull-Dinsmore Co. 159 Minn. 395, 199 N. W. 85; 38 Cyc. 2009, and cases cited under note 16.

Plaintiff complains because the court excluded a conversation between him and a representative of Stevens & Company which took place after the bonds had been sold to defendants and after plaintiff had received other bonds as security for his claim. We see no error

in this ruling. At most it could only have disclosed an admission by Stevens & Company made after the completion of the transaction by which defendants became owners of the bonds and was not admissible against them.

Plaintiff also complains because the court declined to give an instruction requested orally to the effect that the burden of proof was on defendants to show that he gave the bonds to Stevens & Company expecting to receive other bonds in exchange therefor. As the decided weight of evidence was to that effect, such an instruction would not have been of much importance. It would perhaps be sufficient to say that the request was neither put in writing nor stated in a form in which it could be properly given to the jury. But the facts did not require such an instruction. The bonds were delivered to Stevens & Company, not as plaintiff's agent nor to accomplish any purpose of plaintiff, but solely for the accommodation of Stevens & Company. They were transferable by delivery. They were sold and delivered by Stevens & Company to bona fide purchasers for full value. Plaintiff attacked the title of these purchasers and the burden was on him to show that the title was defective. He was in a better position than defendants to show the facts.

Mr. Crosby died after the appeal was taken, and the Merchants Trust Company as administrator of his estate has been substituted as plaintiff. But the term plaintiff as used in the opinion refers to Mr. Crosby.

We find no other questions requiring special mention and the order is affirmed.