RORY *v.* STATE.

(Division A.   Nov. 2, 1936.)

[170 So. 304.   No. 32354.]

Neill & Townsend, of Indianola, for appellant.

Webb M. Mize, Assistant Attorney-General, for the state.

Smith, C. J., delivered the opinion of the court.

This is an appeal from a conviction of grand larceny. The appellant's complaint is that the court below should have granted his request for an instruction directing the jury to return a verdict of not guilty. The reason assigned therefor is that the evidence discloses that the appellant, if guilty of anything, is guilty of obtaining money under false pretenses and not of larceny.

The evidence for the state, in substance, is to the ef-

fect that Ridley Seals and Jim Turner were traveling in an automobile on one of the streets in Indianola and passed the appellant who was walking in the same direction. Another automobile passed them, and, immediately thereafter, the appellant picked up a pocketbook in the street. Turner and Seals stopped, and the appellant came up to them; whereupon Seals asked appellant why he did not put the pocketbook in his pocket. The appellant then asked Seals and Turner if they saw him pick up the pocketbook, and, on their replying "yes," offered to split its contents with them in three ways if they would not "trap him." Seals then opened the door of the automobile; appellant got into it and dropped what Seals says was a one hundred dollar bill, which he offered to divide with the other two. On being asked how he was going to change it, the appellant said his "boss man" had seventy-five dollars belonging to him, and that he would borrow sixty dollars from his "boss man." Appellant then left to see his "boss man" and, after a short interval, returned and said his "boss man" found two thousand dollars in the pocketbook in addition to the one hundred dollars heretofore mentioned, which two thousand dollars the "boss man" kept. The evidence here is a little confusing, but the best we can gather therefrom is that the "boss man" would redeliver the two thousand dollars to the appellant if they (appellant, Seals, and Turner) would show him that they had enough money to take care of themselves through "this winter without bothering" the two thousand dollars. Turner then took five hundred fifty dollars, according to Seals, from his pocket and handed it to the appellant to show the "boss man" that he (Turner) was "no bum." Seals then said he had some money with him, but more at home. All of them, or Turner and Seals—it is not clear—then went to Seals' home where he obtained forty-nine dollars from his wife to which he added thirty-six dollars and sixty-five cents,

making a total of eighty-five dollars and sixty-five cents, which he handed to Turner, who immediately handed it to the appellant for the purpose of showing the "boss man" that he (Seals) had "enough money to live on this winter without bothering any of this money," the two thousand dollars. The appellant then left for the purpose of carrying the money put up by Turner and Seals to his "boss man," and later returned and said his "boss man said that. He said he would meet us at the postoffice and divide the money, that his boss' partner didn't want to see him counting that much money out among the colored folks." The appointment was kept by Seals, but not by the others, and the appellant has not returned to Seals the money put up by him.

If, when he gave the eighty-five dollars and sixty-five cents to the appellant, Seals intended to part with the ownership thereof, the appellant, because of the false pretense by which he obtained the money, is guilty of the crime of obtaining money under false pretenses. But if Seals gave the money to the appellant to be used for a special purpose and then to be returned to him, the appellant is guilty of larceny. Courtney et al. v. State, 174 Miss. 147, 164 So. 227. It is clear from the evidence that Seals gave the money to the appellant, not for the appellant's own use and benefit, but to be returned to him (Seals) after the special purpose for which it was given to the appellant had been accomplished. It is true that Seals, in his evidence, used the words "give" and "gave," as did counsel when questioning him regarding what occurred between him and the appellant; but it is clear from the evidence that the words were used by Seals and understood by him in the sense of "deliver" and "delivered." The appellant, therefore, was rightly convicted of larceny.

The appellant further said that there is a variance between the allegation of the indictment and the proof. The indictment alleges that the eighty-five dollars and

sixty-five cents obtained by the apellant was ''the property of one Ridley Seals,'' while the evidence discloses that part of it was obtained by Seals from his wife. An indictment for larceny must allege the ownership of the property stolen, but the ownership alleged need not be complete but may be special; e. g., bailee, custodian, and ''even such unlawful possession as the thief's who has stolen it.'' 2 Bishop New. Crim. Proced. (4 Ed.), sec. 721; 36 C. J. 833; Horn v. State, 165 Miss. 169, 147 So. 310. This being true, we shall leave out of view and express no opinion on the relevancy of the fact here that thirty-six dollars and sixty-five cents of the money was the sole property of Seals.

Affirmed.