# STEVE WELCH v. STATE.

No. A-10265.   Feb. 10, 1944.

(146 P. 2d 141.)

Earl E. James, of Oklahoma City, Walter Billingsley, of Wewoka, and David Tant, of Oklahoma City, for plaintiff in error.

Randell S. Cobb, Atty. Gen., J. Walker Field, Asst. Atty. Gen., Homer Melton, Co. Atty., and Edward H. Brady, both of Vinita, for defendant in error.

BAREFOOT, J. Defendant, Steve Welch, was charged in the district court of Craig county with the crime of obtaining property by false pretenses, was tried, convicted and sentenced to serve a term of five years in the State Penitentiary, and to pay a fine of $500, and has appealed.

The propositions for reversal of this case may be considered together. They are that the court erred in refusing to sustain the demurrer to the information; the demurrer to the evidence; and that the court failed to properly instruct the jury.

The facts in the case are not disputed. The evidence was presented by the state, and the defendant did not testify, and did not present any witnesses.

The facts were: that prosecuting witness, Rand Flanders, age 31 years, was a resident of Craig county, Oklahoma. He had been a farmer, but had retired in 1937, and worked on construction jobs at different times thereafter. In October, 1940, he met Emmett Walton and Tom James about four miles north of Vinita, in Craig county, after dark. They approached him and asked him if he had some money. On November 2, 1940, he met Walton and James in Vinita, got in the car with them and they drove out east of Vinita about a mile, and at that time Tom James pulled out a five dollar bill and said: "Here is one of the five dollar bills we could make—we made that." They then drove to town, and let the witness out of the automobile at the bank across from the city hall. Before

they left him, they told him that they could not do that themselves, but they had a friend who could, and they would be back in two or three days. Later James and Walton went to his home, and he went with them in their car to a place near Chelsea, in Rogers county, and went into a cabin about a mile from town, where Emmett Walton introduced him to the defendant, Steve Welch, who was introduced as Mac Miller. Welch illustrated what he could do towards raising bills. He put them in chemicals and cleaned or bleached the one dollar bills. He then placed what the witness thought was a "cleaned" one dollar bill on a piece of glass that looked like a piece of windshield, and lifted the five dollar bill out of the chemicals and placed it on the cleaned bill, and put another bill or paper over it, and rolled it with some kind of a roller, and witness thought they had transferred the denomination of the larger bill on one side of the paper. They did not permit him to make much of an examination of what they had done. It was also testified that when they left, a woman came out to clean the cabin, and defendant told James to tell her not to clean it, explaining that he did not want her to smell the chemicals.

They then went back to Vinita in Craig county. When they got to town, Walton and James wanted some money, and the defendant wanted some for a casing. On the next day, November 3, 1940, Walton and James went to the home of the prosecuting witness, Rand Flanders, and he went with them north of Vinita and they "ran on to" the defendant, Steve Welch. He got in the car with them, and defendant said: "Rand, we can't only change this money from a one to a five, but we can change one to five, to ten, to twenty, to fifty and to a hundred; and we will give you five hundred dollars for the use of your money at Joplin." Defendant told the witness that he could raise the de-

nominations of the bills, and witness believed his statements.

On the next day, November 4, 1940, Emmett Walton came back and wanted to take the money and go to Joplin that night. Prior to going to Joplin, the witness testified that he gave the defendant, Steve Welch, Emmett Walton and Tom James the sum of $105 or $106 in Craig county, a part of said money to be used in getting one dollar bills to raise, and a part to buy new casings for defendant's car.

According to the agreement, the witness went to Joplin, Mo., on November 4, 1940, and went to a hotel where he met James, and they went up to the room of the defendant and James. The prosecuting witness then turned over to defendant $3,000 in bills, and the defendant agreed to return to him the $3,000, and an additional $500 for the use of the money. The prosecuting witness' exact testimony as to this transaction was as follows:

"Q. Now, Mr. Flanders, did you see Steve Welch subsequent to this time? A. Yes, sir, saw him in jail up here, and in Joplin, too. Q. Saw him in Joplin and in jail? A. Yes, sir. Q. Did you have a talk with him? A. Yes, sir. Q. What did he tell you, Steve Welch? A. Just went in the hotel and met James, and I went and got my room and went up, and directly I got a call from James and he come up to my room, and we took the money and went to their room. Q. Whose room? A. Steve Welch and Tom James' room, on the seventh floor, and 45 room, and I turned the money over to him. Q. How much money was that? A. $3,000, and he was to give me the three thousand back and $500 for the use of my money. Q. What about the money that was used—how much was it to get those bills cleaned? Mr. James: We object, if the court please— Witness (interrupting) $45. Mr. James (continuing) for the reason that the charge here is obtaining $3,000, and he testified that he gave the full $3,000 in Joplin, Mo., and proof of any other transaction wouldn't be evidence in this

case, and wouldn't tend to prove or disprove any issue in this case. The Court: Overruled. The jury may consider the dealings and transactions had between the prosecuting witness and the defendant for whatever light it may throw on the transaction charged in the information. Go ahead. Mr. James: May I ask a question, if the court please, whether or not the hundred dollars was to be used only as expenses, and not as a part of the money charged in this case. The Court: Consider it for that purpose at this time. All right, proceed. A. And then he went out later and came back, and Steve was going to get something to eat, and I sure thought he was going to bring those bills to my room. Mr. James: If the court please, we object to the voluntary statement of the witness. The Court: Go ahead. Answer the question of the county attorney. (To the Reporter) Read him the question. (At this time the question is duly read by the reporter.) The Court: Overruled. Answer the question. A. I did give it to him."

And during the cross-examination, the following:

"Q. You did give the $3,000 up there? A. Yes, sir. Q. I mean, you gave him the $3,000. And for that $3,000 you were to get your money back plus some more? A. Sir? Q. For that $3,000 you were to get your money back and some more? A. I was to get my money back that night, and later I was to get $500. Q. And they told you—promised you, that they would pay it to you in a future—in the future some time? A. No, I was to get the $3,000 back that night—not no future to it. Q. But it was some time later that you was to get it back? A. Well, in 30 minutes, something like that, I was to get it back. Q. In 30 or 40 minutes later. A. I would say that night. It wasn't no four or five days later. Q. And $500 was to be your profit for entering into this arrangement to counterfeit money? A. What was to be my part? Q. Your $3,000 back, plus the $500 profit? A. I was to get my money back, and five hundred for the use of my money. Q. And that was to be your profit, helping them to counterfeit it? A. I wasn't helping them. Q. You furnished a part of the supplies?

A. A part of it. Q. And he just walked off and left with that three thousand? A. He did."

There was also evidence, offered by the state, that when the money was turned over to the defendant, he departed and never returned to deliver the $3,000 or the $500, as promised. This amount was a total loss and had never been recovered. And that he reported this to the sheriff of Rogers county, and defendant was arrested and charges filed as above indicated.

There was offered in evidence a check to show that prosecuting witness had drawn $3,000 from the First National Bank of Vinita on November 4, 1940, the day he went to Joplin. He testified that this money had been acquired from the sale of cattle and work he had done after retiring from the farm in 1937.

The information charged defendant with obtaining property by false pretenses. It charged that the amount obtained was $3,000, which was the amount paid in Joplin, Missouri, and no mention is made in the information of the $105 or $106 paid by the prosecuting witness in Craig county, Oklahoma.

The statute under which defendant was charged and tried was Tit. 21 O. S. A. 1941 § 1541, which is as follows:

"Every person who, with intent to cheat and defraud, shall obtain * * * from any person, * * * any money, property, or valuable thing, of the value of Twenty ($20.00) Dollars, or less, by means or by use of any trick or deception, or false or fraudulent representation, or statement or pretense * * * shall be guilty of a misdemeanor * * *. If the value of the property, money or valuable thing referred to in the preceding paragraph, be more than Twenty ($20.00) Dollars, any person convicted hereunder shall be deemed guilty of a felony and shall be punished by imprisonment in the State Penitentiary, for a term not ex-

ceeding seven (7) years, or by a fine not to exceed Five Hundred ($500.00) Dollars, or by both such fine and imprisonment. * * *"

It is contended by defendant that, admitting all the facts proven by the state and all of the inferences to be deducted therefrom, they are insufficient to sustain the judgment and sentence pronounced in this case, for the reason:

First: It is not shown or alleged that the defendant made a false statement of a past event, or of an existing fact or event.

Second: If the evidence proved the defendant guilty of an offense it was one materially different from that charged and of which he was convicted.

As to the second proposition, the contention is that he was guilty of larceny by fraud, and not of obtaining property by false pretenses. To support this contention, counsel for defendant cite the following cases from this court: Bivens v. State, 6 Okla. Cr. 521, 120 P. 1033; Helsey v. State, 18 Okla. Cr. 98, 193 P. 50 17 A. L. R. 197; Huckaby v. State, 22 Okla. Cr. 376, 211 P. 525; Riley v. State, 64 Okla. Cr. 183, 78 P. 2d 712; Dobson v. State, 74 Okla. Cr. 341, 126 P. 2d 95; and Hagan v. State, 76 Okla. Cr. 127, 134 P. 2d 1042. Reference will hereinafter be made to these cases.

Many of the cases cited by the defendant and by the state have reference to statutes upon false pretenses which are different from the statute under which defendant is charged. This is especially true as to the first proposition urged by defendant. They have reference to the construction of statute similar to Tit. 21, O. S. A. 1941 § 1542, which is as follows:

"Every person who, with intent to cheat or defraud another, designedly, by color or aid of any false token or writing, or other false pretense, obtains the signature of any person to any written instrument, or obtains from any person any money or property, is punishable by imprisonment in the penitentiary not exceeding three years or in a county jail not exceeding one year, or by a fine not exceeding three times the value of the money or property so obtained, or by both such fine and imprisonment."

But as stated above, defendant is here charged and tried under section 1541 above quoted. Many of the authorities cited are under statutes similar to our section 1541. We have examined not only the cases cited but have made an examination of many other cases and text books bearing upon the issues raised in this case. We have done this for the reason that the evidence reveals that the prosecuting witness has been defrauded of his money, $3,000, by the defendant and his associates, and if this case is to be reversed it is by reason of the harsh terms of the law. If we could upon our oaths do that which we would like to do, taking into consideration the facts as they here exist, we would unhesitatingly affirm this judgment, and let this defendant receive the punishment he so justly deserves. But from an examination of the authorities, we find that they are in universal accord in sustaining the contention of the defendant that if he was guilty of any crime it was larceny by fraud, and not that of obtaining money under false pretenses. We have in this state a statute which makes larceny by fraud a crime. It is Tit. 21, O. S. A. 1941 § 1701, and is as follows:

"Larceny is the taking of personal property accomplished by fraud or stealth, and with intent to deprive another thereof."

This statute has been construed in this state many times. (See cases hereafter cited.)

Defendant's first proposition that in making a false pretense the pretense must be a representation as to an existing fact or past event, and not as to something to take place in the future, is a true statement of the law, and this principle has been recognized by this court in many decisions and by all texts and other courts. The general rule is stated in 22 Am. Jur. p. 452, sec. 14, as follows:

"It is a well-established rule of criminal law that a false pretense or representation to be indictable must be an untrue statement of a past or an existing fact. False representations amounting to mere promises or statements of intention have reference to future events and are not criminal within false pretense statutes, even though they induce the party defrauded to part with his property. The distinction is not based on any difference in degrees of moral turpitude between the two sorts of scoundrelism, but upon the supposed necessity of limiting in some way the broad signification of the words of the statute. Generally speaking, the obtaining of a loan of money or property under a promise to repay or return it without other representation although there is actually no intention to repay it does not constitute the crime of obtaining money by false pretenses."

The application of the facts to each individual case has often caused different constructions to be placed upon statutes of very similar import. It is contended by the state in the instant case that many of the representations made by the defendant had reference to past events and were in reality representations of existing facts; it being contended that the defendant made the false representation that he had in the past done similar things and at that very moment had the ability and the means to again accomplish the act. If this were the only proposition relied upon in this case, we would be inclined to go a long way in sustaining this contention. This would be especially

true if defendant had been charged and tried under section 1542, and not under section 1541 of the statutes, supra.

The state cites a number of Kansas cases, and one case from this court upon this proposition: State v. Briggs, 74 Kan. 377, 86 P. 447, 7 L. R. A., N. S., 278, 10 Ann. Cas. 904; State v. Cowdin, 28 Kan. 269; State v. Gordon, 56 Kan. 64, 42 P. 346; State v. Beezley, 119 Kan. 300, 239 P. 998; Smith v. State, 7 Okla. Cr. 136, 122 P. 732.

These cases to a great extent uphold the contention that the false representation as to a past event or existing situation, where accompanied by future promises, does not relieve the defendant to take the criminal character from the false pretenses as to existing or past facts.

Counsel for the state has filed two briefs. As to the second proposition, which is the serious proposition in this case, they claim that the defendant did not intend to receive back the same money which he delivered to defendant, and that therefore the title to the money passed, and that the obtaining of the same was by false pretenses, and was not larceny by fraud.

The trouble with this contention is that it is directly contrary to the evidence of the prosecuting witness, which has heretobefore been quoted. He testified positively that he expected the return of the $3,000 within one hour from the time of the delivery of the same to the defendant. That he waited at the hotel room of the defendant for him to return with the money. On cross-examination he stated that he did not expect to wait days for the return of his money, but again and again testified that he waited and expected it within an hour, and that he expected it that night. This was the state's testimony and the only testimony upon which it could rely to sustain the conviction in this case.

All of the authorities agree that the distinction between obtaining money by false pretense and larceny by fraud is very close. Where money is obtained, instead of other property, the distinction is even more close. Yet all of the authorities are practically agreed that there is a definite distinction between the two crimes and that distinction is: If the owner, in parting with the property by false pretenses, intends to invest accused with the title as well as the possession, the latter has committed the crime of obtaining the property by false pretenses, but if the intention of the owner is to vest accused with the mere possession of the property, and the latter, with the requisite intent, receives it and converts it to his own use, the crime is larceny by fraud.

A number of states have enacted statutes eliminating this distinction, and saying that if property has been obtained, either by false pretense or by larceny, that the accused shall be declared guilty. We have no such statute in this state. State v. Burke, 189 Wis. 641, 207 N. W. 406; State v. Tower, 122 Kan. 165, 251 P. 401, 52 A. L. R. 1160.

We cannot quote from the many cases and texts that have been examined. They are in perfect accord as to the distinction between the two crimes as above stated. We merely cite some of them. Many of them are almost identical with, or very similar to the facts in the instant case: 35 C. J. S., False Pretenses, § 3, p. 638; 36 C. J. p. 778, note 18; 17 R. C. L. p. 8, sec. 6, and p. 14, sec. 14; 32 Am. Jur. p. 893, sec. 7; 26 A. L. R. 391; Segal v. State, 98 Tex. Cr. R. 485, 265 S. W. 911, 35 A. L. R. 1336; Williams v. State, 124 Ohio St. 585, 180 N. E. 58, 83 A. L. R. 441; Bivens v. State, 6 Okla. Cr. 521, 120 P. 1033; Helsey v. State, 18 Okla. Cr. 98, 193 P. 50; McKinney v. State, 19 Okla. Cr. 94, 198 P. 108; Huckaby v. State, 22 Okla. Cr. 376, 211 P. 525; Loomis v. People, 67 N. Y. 322, 23 Am.

Rep. 123; State v. Antoine, 155 La. 120, 98 So. 861; Jacobson v. State, 24 Ariz. 402, 209 P. 310; People v. Selk, 46 Cal. App. 2d 140, 115 P. 2d 607; People v. Shwartz, 43 Cal. App. 696, 185 P. 686; People v. Rabe, 202 Cal. 409, 261 P. 303; State v. Chamberlain, 215 Iowa 273, 245 N. W. 277; People v. Barnett, 31 Cal. App. 2d 173, 88 P. 2d 172; Courtney v. State, 174 Miss. 147, 164 So. 227; State v. Ewing, Mo. App., 270 S. W. 116; State v. Burke, 189 Wis. 641, 207 N. W. 406; 25 C. J. 657, note 24; United States v. Mangus, D. C.; 33 F. Supp. 596; People v. Stiller, 255 App. Div. 480, 7 N. Y. S. 2d 865, affirmed 280 N. Y. 519, 19 N. E. 2d 923; Crosby v. Paine, 170 Minn. 43, 211 N. W. 947; Rory v. State, 176 Miss. 835, 170 So. 304; State v. Tower, 122 Kan. 165, 251 P. 401, 52 A. L. R. 1160 (this case gives a complete history of the false pretense statute); Simmons v. State, 165 Md. 155, 167 A. 60; Riley v. State, 64 Okla. Cr. 183, 78 P. 2d 712; Dobson v. State, 74 Okla. Cr. 341, 126 P. 2d 95; Hagan v. State, 76 Okla. Cr. 127, 134 P. 2d 1042.

Some of the cases above cited are directly in point as to the issue here involved. We desire to quote from some of them, as they state the reasons for the rule above announced.

In the case of Courtney v. State, supra [174 Miss. 147, 164 So. 228], the Supreme Court of Mississippi held:

"The indictment alleges, in substance, that the appellants, Eli Courtney and Frank Woods, falsely and feloniously pretended to Steve Price that they had found a pocketbook containing a large sum of money, and that they offered to divide its contents with Price if he would give them a certain sum of money; that Price gave them $100, whereas Courtney and Woods had not found a pocketbook, or any sum of money.

"The appellants introduced no evidence, and that of the state discloses that Price met Woods on the streets of

Indianola, and immediately thereafter they met Courtney, who said that he had found a pocketbook, showed it to Price and Woods, and asked them 'not to give him away,' promising if they would not that he would divide the contents with them. To this they agreed. The pocketbook appeared to contain money. Courtney then left them, stating that he would get the money changed, and return. On returning he stated that he had delivered the pocketbook to a man who was Woods' and his 'boss'; that the pocketbook contained $1,600 in money and some bonds; that the 'boss' said he would keep the bonds and return the money to Courtney and his companions, provided they would put up $100 or $200 to show that they were in good standing. Price then delivered to either Woods or Courtney $100 in cash, the agreement being that this $100 was to be returned to him, and, in addition, one-third of the $1,600. They then agreed to meet later and consummate the deal. Woods and Courtney failed to keep this appointment, and did not return to Price his $100. They were arrested the next day at Moorhead. One of them had in his possession a pocketbook containing 'green and yellow' coupons, which was identified by Price as being the one that they claimed to have found. Courtney stated to the officer who arrested them that 'they went back by Sunflower to dodge the law because they knew the law had their eye on them.'

"The appellants say, in effect, that the false pretense is not proven, the evidence failing to negative the finding of the pocketbook containing the sum of money; but, if mistaken in this, the crime of obtaining money under false pretense was not proven, the appellants being guilty of larceny, if of anything. We will assume, but merely for the purpose of the argument, that the evidence discloses that no pocketbook or money was found; for, assuming that the contrary is true, the crime committed would not be obtaining money under false pretenses, but larceny. Price in delivering the money did not intend to, nor did he, divest himself of the title and ownership thereto, but what he delivered was merely possession of the money to

be used for a specific purpose and then returned to him.

"At common law, where one obtains the possession of, but not the title to, property from another by means of a false pretense, and with the requisite intent converts it to his own use, the crime committed is larceny. But if the owner in parting with the property invests the recipient with the title thereto, as well as the possession thereof, no larceny is committed. 9 Halsbury's Law of England (2d Ed.) § 953; 2 Bishop's New Crim. Law (8th Ed.) §§ 477 and 808; 25 C. J. p 657; 36 C. J. p. 778; Foster v. State, 123 Miss. 721, 86 So. 513. It will thus be seen that the passing of title constitutes the line of demarcation between larceny and false pretense. Obtaining title to property by a false pretense was indictable at common law, provided the pretense was such as affects the public interest. 1 Hawkin's Pleas of the Crown, 318; Halsbury op. cit. § 954; 25 C. J. p. 584. To remedy this defect in the common law, the statute of 33 Hen. 8, c. 1 (1 Hawkin's op. cit. 319) was enacted, and afterwards other statutes, among which are 30 Geo. 2, c. 24, § 1, 52 Geo. 3, c. 64, §§ 1, 7, and 8 Geo. 4, c. 29, § 53, 24 and 25 Vict. c. 96, § 88 and Regina v. Kay, 1 Law Reports, c. 257. The substance of these statutes has been generally enacted in America and appears in section 919, Code 1930. Under these statutes the courts hold that the word 'obtain' means not to acquire the mere possession of property, but to acquire the title thereto or the ownership thereof. Halsbury op. cit. § 962, Regina v. Kay, supra, and other authorities hereinbefore cited.

"The crime of larceny was here committed according to the evidence of the state, although it should not appear therefrom that a pocketbook containing money was actually found; for the appellants obtained money from Price by means of a promise to use it for a specific purpose and to return it to him. The act constitutes larceny provided the money was obtained with the requisite intent. Akroyd v. State, 107 Miss. 51, 64 So. 936.

"The court below should have directed a verdict for the appellants, because of the variance between the indictment and the evidence, and, under section 1190, Code 1930,

should have ordered them 'into the custody of the proper offficer' for trial under an indictment charging the offense which the evidence discloses they committed."

In the case of Crosby v. Paine, supra [170 Minn. 43, 211 N. W. 948], the Supreme Court of Minnesota said:

"We cannot sustain the contention that the acts of Stevens & Co. constitute common-law larceny as distinguished from the crime of obtaining property by false pretenses. Where the wrongdoer, by fraud, induces the owner to part with the possession, but not with the title of his property, and thereafter feloniously disposes of it, he is guilty of common-law larceny; but, where he induces the owner, by fraud, to part voluntarily with both possession and title, he is not guilty of larceny, but of obtaining property by false pretenses. The distinguishing element between the two is whether the owner intended to part with possession only, or expected and intended to part with both possession and title. This distinction is recognized by an almost unbroken line of authorities. 18 Am. & Eng. Enc. (2d Ed.) p. 469, states:

" 'It is well settled that a taking within the definition of larceny occurs where a person, by means of some fraud or trick, and with intent to steal, procures the delivery of goods to him by the owner, * * * unless the delivery is made for the purpose of passing the property or title in the goods as well as the possession.'

"The same volume, at page 481, states:

" 'If the owner of goods, intending to transfer the title thereto, delivers them to another person, * * * the fact that such a delivery was procured by some fraudulent or deceitful practices, and with the design of cheating or defrauding the owner, will not make the receipt of the goods a taking on which a charge of larceny may be founded.'

"17 R. C. L. p. 13, § 13, states:

" 'If a person with a preconceived design to appropriate property to his own use obtains possession of it by

means of fraud or trickery, the taking under such circumstances amounts to larceny.'

"The same volume, on page 14, § 14, states:

" 'If the owner of goods * * * voluntarily parts with both the possession and the title, to the alleged thief, not expecting the goods to be returned to him or to be disposed of in accordance with his directions, then neither the taking nor the conversion amounts to larceny. * * *

" 'This rule applies even where the owner is induced to part with the title through the fraud and misrepresentation of the alleged thief. In such cases the crime committed may be obtaining property by false pretenses.'

"To same effect see 36 C. J. 774, 775, 777; 25 C. J. 657; 1 Bish. Cr. Law (9th Ed.) § 583; Clark and Marshall Law of Crimes, 461; McClain Cr. Law §§ 563, 659. In the section last cited the author states:

" 'If the owner parts with his property not expecting to have it back again, and he is induced to do so by what constitutes false pretenses, there cannot be a conviction for larceny.' "

This was a civil case, but the facts are almost identical with the facts here presented, except that the title to six Brazilian bonds of one thousand pounds sterling were taken by fraud and trickery, but under the facts the title to the bonds passed, and the court held that the defendants were guilty of taking money by false pretenses, and not larceny.

In the case of Loomis v. People, supra, the Supreme Court of New York said:

"The defendants conspiring together fraudulently and feloniously to get possession of the prosecutor's money, induced him, by a trick and fraudulent device, to deliver his money to one of them for a moment and for a specific purpose, whereupon they converted it to their own use without his consent. Held, that they were guilty of larceny."

The evidence was that money was secured by trick and fraudulent device very much like the facts in the instant case. The court said:

"It is evident that the prisoner Lewis and his confederate Loomis conspired fraudulently and feloniously to procure the money of the prosecutor, and by means of a trick and device succeeded in converting it to their own use. Upon the facts proven, the question to be determined is, whether a case of larceny is established. The jury have found that it was the intention of the prisoners to convert the money without the consent, and against the will of the prosecutor, and that he did not intend to part with his property. I think that the conclusion at which they arrived was abundantly warranted by the evidence, and the conviction of the prisoners can be upheld upon well-established legal grounds.

"It is contended that the conviction was erroneous, because the prosecutor voluntarily parted with his money, not expecting to receive back the same bills, but others in their place, and hence the crime was not made out. It must be conceded that, in order to establish the offense of larceny, there must be a trespass, and without this element the offense is not complete. 1 Hawk. Pl. Cr., § 1, p. 108; 2 Russ. on Crimes (5th Am. ed.), 95; People v. McDonald, 43 N. Y. 61; Hildebrand v. People, 56 N. Y. 394, 15 Am. Rep. 435. Even although the owner is induced to part with his property by fraudulent means, yet if he actually intends to part with it, and delivers up possession absolutely, it is not larceny. Smith v. People, 53 N. Y. 111, [13 Am. Rep. 474].

"In this case, considering the circumstances, it cannot be deemed, we think, that the prosecutor intended to part with the possession or the ownership of the money. It was handed over for a particular purpose, with no intention to loan it, or absolutely to surrender the title, and it was only in case of its loss that other money was to be procured upon the check, which the prisoner Lewis claimed to have in his possession. The prosecutor then had parted with no

absolute right to the same, nor transferred any title to the bills before the contingency of the loss occurred, and the use of the money was but temporary, and for a specified object. Certainly, when it appeared that no loss had happened, the temporary possession was at an end, and to all intents and purposes the money reverted to the prosecutor. The alleged loss, brought about by the criminal and fraudulent conduct of the prisoners, could not change the title, or in any way transfer the ownership to them. They did not thereby acquire any right, and it cannot seriously be questioned that at this time, if not before, the prosecutor would have been justified in taking the money forcibly, or could have maintained an action for the recovery of the same identical bills. It was his money, and the conversion of it by the prisoners, before it was won, was without a semblance of lawful authority, and, as the jury have found, with a felonious intent.

"It was a clear case of larceny, as marked and significant in its general features as if the prisoners had wrongfully seized and appropriated it when first produced. The form of throwing the dice was only a cover; a device and contrivance to conceal the original design, and so long as there was no consent to part with the money, does not change the real character of the crime. While the element of trespass is wanting and the offense is not larceny, where consent is given, and the owner intended to part with his property absolutely, and not merely with a temporary possession of the same, even although such consent was procured by fraud, and the person obtaining it had an animus furandi, yet as is well said by a writer upon criminal law:

" 'It is different where, with the animus furandi, a person obtains consent to his temporary possession of property, and then converts it to his own use. The act goes farther than the consent, and may be fairly said to be against it. Consent to deliver the temporary possession is not consent to deliver the property in a thing, and if a person, animus furandi, avail himself of a temporary possession for a specific purpose, obtained by consent to convert the property in the thing to himself and defraud the

owner thereof, he certainly has not the consent of the owner. He is, therefore, acting against the will of the owner, and is a trespasser, because a trespass upon the property of another is only doing some act upon that property against the will of the owner.'

"In the case at bar there was no valid agreement to part with the money absolutely, and no consent to divest the owner of his title. It was passed over for a mere temporary use at most and the legal title remaining in the owner, the conversion of it by the prisoners within the rule cited was larceny. The reports are full of familiar illustrations of this rule, as a reference to some of the leading cases will show."

The Oklahoma cases referred to adhere to this doctrine. In the case of Riley v. State, supra [64 Okla. Cr. 183, 78 P. 2d 713], it was said: "The distinction between 'larceny' and 'false pretense' is a very narrow margin. The character of the crime depends on the intention of the parties. If the owner parts with the 'possession' and 'title' of the property 'voluntarily,' it is not larceny. If the owner is induced to part with possession by fraud and misrepresentation and the title to the property does not pass, and there is a fraudulent intent at the time to appropriate the property to one's own use and deprive the owner thereof, it is larceny."

In Dobson v. State, 74 Okla. Cr. 341, 126 P. 2d 95, 96, we said:

"If the owner parts with the possession and title, due to the deception and artifice of the taker, then the offense constitutes obtaining property by false pretenses, and not larceny by fraud.

"The intention of the owner not to part with title to his property when relinquishing possession is the vital point to be determined in distinguishing between larceny by fraud and obtaining property by false pretenses."

In the case of Hagan v. State, supra [134 P. 2d 1045], we said:

"The distinction between 'larceny' and 'false pretense' is a very narrow margin. The character of the crime depends on the intention of the parties. If the owner parts with the "possession' and 'title' of the property 'voluntarily,' it is not larceny. If the owner is induced to part with possession by fraud and misrepresentation and the title to the property does not pass, and there is a fraudulent intent at the time to appropriate the property to one's own use and deprive the owner thereof, it is larceny."

The rule announced above is based upon the early decisions of this court. In the case of McKinney v. State, 19 Okla. Cr. 94, 198 P. 108, 109, the Attorney General confessed error and the court sustained the same. It is there said:

"If one obtains possession of the property of another by fraud, and the owner intends to part with the title as well as the possession, the offense is that of obtaining property by false pretenses; but if the possession is fraudulently obtained, with the intent on the part of the person obtaining it to convert it to his own use, and the owner intends to part with the possession merely, and not the title, the offense is larceny."

See, also, Bivens v. State, 6 Okla. Cr. 521, 120 P. 1033; Helsey v. State, 18 Okla. Cr. 98, 193 P. 50, 17 A. L. R. 197; Huckaby v. State, 22 Okla. Cr. 376, 211 P. 525.

We have heretofore quoted Tit. 21 O. S. A. §§ 1541 and 1542. Section 1542 is the original "false pretense" statute, and was in existence prior to statehood, in Oklahoma Territory. It was taken from the Compiled Laws of Dakota, and the penalty prescribed is not to exceed three years in the penitentiary, or one year in the county jail, or by a fine of not exceeding three times the value of

the money or property so obtained, or by both such fine and imprisonment.

Section 1541 was enacted by the Legislature in 1923 (chap. 33, p. 47, sec. 1). It amended the Act of 1913 (Chap. 72, p. 112, sec. 1), and was known as the "bogus check" law. The punishment prescribed is not to exceed seven years in the penitentiary, or a fine of not to exceed $500, or both such fine and imprisonment.

The two sections are somewhat similar, and at the time this case was orally argued, it was contended by the defendant that he was charged in the information under section 1542, but that the court in instructing the jury gave the penalty under section 1541, which is much greater than the penalty provided under section 1542. And this is assigned as error. We have carefully examined the information, and have come to the conclusion that it was the intention of the county attorney to charge the defendant under section 1541. This for the reason that the exact words of that section are used in the information. The trial court evidently took this view when he instructed the jury, as to the penalty provided by section 1541.

Reference has heretofore been made to the two sections. Many of the decisions of the courts are based upon statutes which have different wording, and this is the cause of apparent conflicts in the decisions. The principles of law here announced distinguishing between "obtaining property or money by false pretense," and "larceny by fraud," are universally recognized by all the courts. And while it is a close distinction, the courts have not hesitated to draw the distinction and reverse the case where one has been charged and convicted under the wrong statute. As above stated, the facts in the instant case reveal that the prosecuting witness was defrauded of a large sum of

money by the defendant and his associates. We would hesitate to reverse this case in view of the facts presented by the record, but the law demands that the same be reversed for the reason that the record discloses that defendant should have been charged and prosecuted for larceny by fraud, and not for obtaining property by false pretenses, for the reason that the prosecuting witness at the time he delivered the $3,000 to the defendant did not intend to pass the title to the same, but only parted with the possession thereof for a limited time, and fully expected the return of the identical money. There is no question but that an action of replevin could have been maintained for the money if the same could have been identified. The question of venue has not been raised or discussed in this case.

For the reasons above stated, the judgment and sentence of the district court of Craig county is reversed and the case remanded for further proceedings.

JONES, P. J., concurs. DOYLE, J., dissents.